KEVIN MENDONZA *vs.* COMMONWEALTH.
COMMONWEALTH *vs.* VINCENT L. CALLENDER.

Suffolk. September 10, 1996. - November 14, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, & FRIED, JJ.

*Moot Question. Due Process of Law,* Substantive rights, Pretrial detainees. *Constitutional Law,* Preventive detention.

Discussion of the provisions of G. L. c. 276, § 58A, which allows pretrial detention of a person accused of certain crimes on the ground of that person's dangerousness. [773-775]

This court undertook to consider moot claims raising constitutional issues of importance to the administration of justice that were capable of repetition yet evading review. [777]

This court declined to conclude, in an action challenging the preventive detention provisions of G. L. c. 276, § 58A, that principles of due process prohibit in all instances the detention on grounds of dangerousness of a person accused of crime prior to an adjudication of guilt. [778-782]

Proof of dangerousness by clear and convincing evidence is sufficient for the purposes of the limited and preliminary preventive detention of a person charged with certain crimes, as provided for in G. L. c. 276, § 58A, and the statute does not violate art. 12 of the Declaration of Rights of the Massachusetts Constitution. [782-784]

Where pretrial detention proceedings under G. L. c. 276, § 58A, afford the defendant the fullest opportunity not only to cross-examine Commonwealth witnesses but also to offer witnesses and evidence, including hearsay evidence, on the defendant's behalf, the statute does not violate art. 12 of the Massachusetts Declaration of Rights by reason of the nonapplicability of the rules of evidence in those proceedings. [785-786]

Any differences between G. L. c. 276, § 58A, authorizing pretrial detention and the Federal Bail Reform Act of 1984, 18 U.S.C. § 3142, by reason of the underlying crimes that invoke use of those statutes or in the probable cause finding prerequisite to its application or the factors to be considered by the judge in determining whether the accused should be detained did not rise to the level of constitutional defects. [786-788]

In a proceeding under G. L. c. 276, § 58A, the judge correctly detained the defendant on a finding that there was clear and convincing evidence that no conditions of release would reasonably assure the safety of the defendant's spouse and children in circumstances in which there was a close connection between the offenses charged and a potential threat to the defendant's family. [788-789]

In a preventive detention proceeding under G. L. c. 276, § 58A, art. 12 of the Massachusetts Declaration of Rights requires that, when the Com-

monwealth, on the sole basis of a finding of probable cause to arrest, seeks a continuance of three or more days for the required hearing on the issue of the accused's dangerousness, during which time the accused would remain in custody, the judge should grant the continuance only if the Commonwealth can show good cause and should make specific findings indicating what that cause is. [789-792]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 5, 1995.

The case was heard by *Greaney*, J.

COMPLAINT received and sworn to in the Somerville Division of the District Court Department on July 3, 1995.

A question of law was reported to the Appeals Court by *Mark S. Coven*, J. The Supreme Judicial Court granted a request for direct review.

*David C. Megan & Barbara F. Berenson*, Assistant District Attorneys, for the Commonwealth.

*Carol A. Donovan*, Committee for Public Counsel Services (*Wendy S. Wayne*, Committee for Public Counsel Services, with her) for Kevin Mendonza & another.

*Ralph C. Martin, II*, District Attorney, & *John P. Zanini*, Assistant District Attorney, for the District Attorney, amicus curiae, submitted a brief.

FRIED, J. In these cases we consider the constitutionality of G. L. c. 276, § 58A (1994 ed.),[1] which allows a judge to detain, prior to trial, a person accused of certain crimes on the ground of that person's dangerousness (preventive detention). In *Aime* v. *Commonwealth*, 414 Mass. 667, 668 (1992), we concluded that G. L. c. 276, § 58, as amended through St. 1992, c. 201, § 3, a predecessor to § 58A, violated the due process clause of the Fourteenth Amendment to the United States Constitution. That earlier provision differed in several respects from the Bail Reform Act of 1984, 18 U.S.C. § 3142, *id*. at 676 & n.12, which the Supreme Court of the United States upheld against a facial constitutional challenge in

---

[1]Between the time Mendonza was arraigned in January of 1995, and Callender's arraignment in July, 1995, G. L. c. 276, § 58A, was revised. St. 1995, c. 39, § 13, effective June 21, 1995. Nothing turns on the revisions and we discuss the statute as it appeared at the time of Mendonza's arraignment. The provision Callender challenges was unchanged by the amendment.

*United States* v. *Salerno*, 481 U.S. 739 (1987). In *Aime, supra* at 681 n.18, we expressly declined to consider the constitutionality of preventive detention under our Declaration of Rights. Section 58A is similar in most respects to the Federal Bail Reform Act.

Kevin Mendonza now challenges its constitutionality under arts. 1, 10, 12, and 26 of the Massachusetts Declaration of Rights. He challenges as well those aspects of § 58A that differ from the Federal legislation on both State and Federal constitutional grounds. Vincent Callender challenges the constitutionality under both Constitutions of the provision in § 58A (4) which the Commonwealth and the District Court read as requiring the pretrial detention of a defendant for three days if the Commonwealth requests a continuance prior to a hearing on dangerousness. Although the Bail Reform Act contains a similar provision,[2] the Supreme Court did not address it in *Salerno*.

We conclude that in the respects challenged by Mendonza, § 58A is valid under the Fourteenth Amendment and the Declaration of Rights, both on its face and as applied to him. A provision that would require detention during a three-day continuance requested by the Commonwealth, without a hearing or any determination of need could not stand under either Constitution, but it is not necessary to read § 58A (4) in this way. The Commonwealth must show good cause for such a continuance, and the judge must in each case make a specific finding indicating what such cause is.

I

A

General Laws c. 276, § 58A, allows a District or Superior Court judge, on motion of the Commonwealth, to order the pretrial detention of a person charged with certain felonies and other offenses involving the use, or threatened use, of violence or abuse, or the violation of protective orders, including protective orders obtained under G. L. c. 209A (1994

---

[2]The provisions are identical except that the Federal statute, 18 U.S.C. § 3142(f), refers to a continuance of "three days" at the request of the government whereas § 58A more specifically refers to "three business days."

ed.). Section 58A sets out a comprehensive scheme of measures available with respect to arrested persons charged with crime. The preferred pretrial disposition is release on personal recognizance. G. L. c. 276, § 58 (1994 ed.). Only if such release will not reasonably assure the presence of the arrested person at trial or the safety of any other persons may the judge impose the least restrictive conditions proposed to him necessary to provide such assurance, including bail in a reasonably necessary amount. G. L. c. 276, § 58A (2). Release is conditioned on the accused's not committing a Federal, State, or local crime during the period of release. G. L. c. 276, § 58A (2) (A). Only if the judge determines after a hearing that no conditions of release will reasonably assure the safety of any other persons may he order the pretrial detention of a person arrested for one of the specified offenses. G. L. c. 276, § 58A (3). A person so detained shall be brought to trial as soon as reasonably possible. In the absence of good cause, he may not be detained longer than ninety days. G. L. c. 276, § 58A (3). The judge is precluded from imposing a financial condition that results in pretrial detention in order to assure the safety of other persons, although financial conditions having that effect are not precluded for the purpose of assuring his appearance before the court. G. L. c. 276, § 58A (2) and (3). Accordingly, the provision should end any tendency to require high bail as a device for effecting preventive detention because it directs that all decisions based on dangerousness be made under the procedures set forth for that specific purpose.

The hearing at which the detention order is sought must take place at the arrested person's first appearance, absent a request for a continuance by one of the parties. The hearing may be continued for three business days on motion of the Commonwealth. The prisoner shall be detained during such continuance on a showing that there was probable cause to arrest him. § 58A (4). The judge at the hearing must find the requisite dangerousness by clear and convincing evidence, G. L. c. 276, § 58A (3) and (4), and shall consider, among other factors, the nature and seriousness of the danger posed by the prisoner if released, the nature and circumstances of the offense charged, his family ties, his employment record, his record of convictions, and whether he is on bail pending adjudication of other prior charges. G. L. c. 276, § 58A (5). The prisoner has a right to counsel at the hearing, including,

if appropriate, appointed counsel. He shall have the right to testify, present witnesses and information, and to cross-examine witnesses who appear against him. The rules of evidence applicable in a criminal trial do not apply at the hearing. The prisoner may be detained pending completion of the hearing. If the judge orders detention, he must issue a written opinion stating his findings of fact as to why such detention is necessary under the terms of the statute. G. L. c. 276, § 58A (4). The judge may reopen the order at any time to consider material new information, G. L. c. 276, § 58A (4), and the prisoner has the right to petition the Superior Court for review of a decision in the District Court. G. L. c. 276, § 58A (7). There is no provision for review of a Superior Court detention order although such review may be had by application to a single justice of this court. G. L. c. 211, § 3 (1994 ed.). The detention must take place, to the extent practicable, in a facility separate from that in which are held persons awaiting or serving sentence or awaiting the outcome of an appeal. G. L. c. 276, § 58A (4).

### B

Four police officers came to Mendonza's house to serve him with a protective order obtained by his wife, requiring him to move out of the family home. Mendonza asked permission to gather his belongings from his bedroom. As Mendonza and three of the officers approached the bedroom he ran into the room and barricaded the door with furniture. When the officers got inside, they found Mendonza standing in a corner pouring gasoline from a canister over his head with one hand and holding a book of matches in the other. Mendonza said, "I have matches and I'll set the whole place on fire." One of the officers subdued Mendonza with "capstun" (a disabling substance), arrested him, and charged him with three counts of armed assault with intent to murder, assault and battery on a police officer, and violation of a protective order for his failure to leave the house when served with the order.

At his arraignment on these charges, the Commonwealth sought a detention order under G. L. c. 276, § 58A, but the judge ordered Mendonza committed to Bridgewater State Hospital for an evaluation of his competency to stand trial and of his criminal responsibility. During this time a grand

jury indicted Mendonza on the charges enumerated above. Almost four months after the initial arraignment and after a series of additional commitments, Mendonza was returned to the Superior Court. On the same day, a hearing was held, and a § 58A detention order issued. The evidence at the hearing included the testimony of a police officer as to statements made to the officer by Mendonza's wife about threats he had made to kill her and an incident in which he had awakened her as he stood over her with a knife. The judge also noted evidence that Mendonza was, or had been, addicted to drugs, that he had a prior history of psychiatric hospitalizations, and that psychiatrists who had observed him during his commitment had thought him an "acute suicide risk." Mendonza filed a petition before a single justice of this court, challenging, among other things, the constitutionality of § 58A. The single justice denied relief and this appeal followed. Mendonza pleaded guilty to the charges of assault and battery, violation of the restraining order, and entered an *Alford* plea, see *North Carolina* v. *Alford*, 400 U.S. 25 (1970), to the charge of attempted arson. The armed assault charges were placed on file. He is no longer in custody.

Callender was arrested for banging on the door of an apartment which a G. L. c. 209A protective order forbade him from visiting. At the time, Callender was on probation for three violations of G. L. c. 209A protective orders. At his arraignment, the Commonwealth moved for a § 58A detention order and requested a continuance for three days. The District Court judge declined to grant the three-day continuance on the ground that the § 58 (4) requirement that a continuance be granted merely at the request of the Commonwealth was unconstitutional. Callender was, however, held for that period on the probation violation, at the end of which time he admitted to sufficient facts on the charges, and was found guilty. Accordingly, no detention order ever issued. Nevertheless the judge reported to the Appeals Court the following question:

> "Does the provision of M. G. L. c. 276, s. 58A(4), which allows for the pre-trial detention of a criminal defendant for three days upon the filing of a motion for an order of pre-trial detention and a request for a three-day continuance, without any other preliminary showing of danger-

ousness or any other type of hearing, violate a criminal defendant's rights under the Fourteenth Amendment to the United States Constitution or Article 12 of the Massachusetts Declaration of Rights?"

We granted Callender's application for direct appellate review.

## II

### A

We note at the outset that, although both cases are moot since both Callender and Mendonza. have admitted guilt and are no longer subject to § 58A, it is entirely appropriate that we proceed to adjudicate both claims. The issues are certainly of recurring importance to the administration of justice in the Commonwealth, yet owing to the limited time during which detention is authorized and the very short time during which a continuance on the motion of the Commonwealth may be granted, they would almost certainly evade review in this court. In such cases we have often proceeded to consider the important recurring question. See *Aime* v. *Commonwealth,* 414 Mass. 667, 670 (1993) (in case raising constitutional concerns nearly identical to those here, "we do not hesitate to reach the merits of cases that no longer involve a live dispute so as to further the public interest"); *Lockhart* v. *Attorney Gen.,* 390 Mass. 780, 783-785 (1984) ("in our discretion . . . we should not offer our views on constitutional issues that will not necessarily arise again in substantially the same form," but "[i]f . . . the issues . . . reappear, they need not evade review before they become moot"); *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court,* 421 Mass. 502, 504 (1995) (taking the opportunity to "reiterate the principles which govern" in a constitutional case even though the dispute before the court was moot, and it was "highly speculative." that it would repeat itself). Cf. *Roe* v. *Wade,* 410 U.S. 113 (1973). Nor is it indispensable that the case be capable of repetition in respect only to the particular claimant. This doctrine is designed to assist in the clarification of the law generally, and not simply to assist the situation of a particular party. See *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 298 (1975); *Norwood Hosp.* v. *Munoz,* 409 Mass. 116, 121 (1991).

## B

Mendonza designates his first and most general challenge to the scheme of § 58A under the rubric of substantive due process. Our decision in *Aime, supra,* also considered at length the distinction between substantive and procedural due process and pointed to the long and strongly entrenched tradition that the former concept enjoys under both our own and the Federal Constitutions. *Id.* at 673-675. The serious challenge Mendonza makes speaks at a level more basic than the particular provisions assuring fair procedures in both Constitutions, which is why in considering the validity under the Fourteenth Amendment of the predecessor statute we were obliged to recur to that linguistically awkward concept of substantive due process. The objection to the procedures in the previous statute were not simply to the way in which the issue of dangerousness was adjudicated but more fundamentally to the use of a prediction of dangerousness as a predicate for a deprivation of liberty at all. This challenge has a firmer textual footing in arts. 1 and 10 than in the Fourteenth Amendment. Both articles recognize explicitly a substantive right to liberty,[3] but the *Aime* court surely was correct to find such a substantive right in the Federal Constitution as well. The firm and detailed safeguards of the criminal process set out in the Fourth, Fifth, Sixth, and Eighth Amendments, the substantive prohibitions against bills of attainder and ex post facto laws in §§ 9 and 10 of art. I of the United States Constitution, and the implicit constitutional requirement that the government has the burden of proving guilt beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 361-364 (1970), would have little meaning if the same deprivations could be worked free of their constraints, though under a different

---

[3]Article 1 of the Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution, provides: "All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

Article 10 of the Massachusetts Declaration of Rights provides in relevant part: "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws. . . ."

rubric than that of the criminal law. Thus it is an underlying premise of both Constitutions that certain deprivations of life, liberty, or property — however they are designated — must be the work of the criminal law and must comply with the safeguards required there.

The Supreme Court in *United States* v. *Salerno*, 481 U.S. 739 (1987), noted that there have been several contexts in which deprivations of liberty have been approved without the full panoply of rights and procedures attendant on the criminal process. It gave as examples the detention of dangerous persons in time of war or insurrection, of potentially dangerous resident aliens, of mentally unstable persons who present a danger to .the public, of dangerous defendants who become incompetent to stand trial, and of juveniles awaiting trial who present a continuing danger to the community. *Id.* at 748-749. The looming danger in moving directly from this list to the conclusion that therefore any and all deprivations of liberty need only be tested by the test of due process in general — that is, are the procedural guarantees commensurate with the severity of the imposition, *Mathews* v. *Eldridge*, 424 U.S. 319 (1976) — is that the distinctive nature of the procedural guarantees of the criminal process enshrined with such emphasis and specificity in both Constitutions would be swallowed up in the undifferentiated weighing invited by a generalized due process analysis. Unfortunately, the *Salerno* decision did little to acknowledge or head off this danger beyond noting that the special safeguards of the Bill of Rights are only applicable in the case of punishment and not where the deprivation of liberty is regulatory. *Salerno, supra* at 746-747. But until we have a firm grasp of what is punishment and what is regulation, this is an example of explaining the obscure by the more obscure. The Justices of this court recently had occasion to address that very question in considering the constitutionality of a bill, since passed into law, permitting notification by law enforcement agencies to police, public and private agencies, and the public of the presence in a community of certain sex offenders who had completed their sentences.

> "[Our criminal justice system] is built on the premise of personal responsibility: Individuals are taken to exercise a choice whether or not to obey the law. Punish-

ment is the consequence visited on willing disobedi-
ence. . . . Our system of criminal justice is not predic-
tive in the sense that it would seek systematically to
identify those who may present a danger to society and
to incapacitate them before that danger may be realized.

". . .

"[T]he Justices are governed by the overriding
concern that the distinctiveness of the criminal justice
system not be elided, lest we move in the direction of a
regime where persons, and not just particular activities
and occupations, are seen as regulated by government,
rather than a regime where persons are seen as person-
ally responsible for conforming their conduct to the
clearly promulgated standards of the criminal law. . . ."
*Opinion of the Justices, post* 1201, 1218-1223 (1996).

The preventive regime of § 58A has a particularly heavy
burden to overcome because it is explicitly "predictive" and
"seek[s] systematically to identify those who may present a
danger to society and to incapacitate them before that danger
may be realized." *Id.* at 1219. We are not inclined to believe
that the Supreme Court in *Salerno* wished to allow any and
all loss of liberty to be justified by a prediction of dangerous-
ness with only generalized due process safeguards. See *Foucha*
v. *Louisiana*, 504 U.S. 71, 75-83 (1992). In any event, if we
are wrong about that, the text and structure of our own more
emphatic guarantees in arts. 1, 10, and 14 do not permit that
baleful conclusion. Each of the examples the Supreme Court
cited included some additional feature that justified taking it
out of the regime of the criminal law: the wartime cases
involve the government's enhanced powers to protect the citi-
zenry from the grave dangers of war and insurrection, see
*Moyer* v. *Peabody*, 212 U.S. 78 (1909); the detention of certain
aliens invokes the government's more plenary power over
persons who may in certain circumstances be removed from
the country, see *Carlson* v. *Landon*, 342 U.S. 524, 537-542
(1952); juveniles and the insane both are thought to act with
diminished responsibility and thus are susceptible to regimes
at once both more intrusive and more paternalistic, see
*Jackson* v. *Indiana*, 406 U.S. 715, 731-739 (1972).

In the case of § 58A, like the Bail Reform Act, the factor
additional to predicted dangerousness is the pendency of a

charge of serious crime, a charge which we may take to have been tested by the standard of probable cause. It requires explanation why that factor should suffice to allow at the very beginning a loss of liberty, which is a consequence that may be imposed only at the end of the criminal process under a much higher standard. Indeed it was argued in *Salerno* and is argued to us now that the excessive bail clauses of the Eighth Amendment and of art. 26 state the only constitutionally permissible means to the only permissible end of pretrial control of an accused, that is assuring the accused's presence at trial and his noninterference with witnesses and other aspects of the pretrial process. The Federal statute followed extensive legislative factfinding that tended to show that a surprising percentage of crimes are committed by persons awaiting trial. There is no reason to doubt that these findings are generally applicable. Senate Rep. No. 225, 98th Cong., 1st Sess., 4-9 (1983). Goldkamp, Gottfredson, Jones & Weiland, Personal Liberty and Community Safety 89-91 (1995) (in cases before Boston Municipal Court, even after detaining dangerous defendants under § 58A, thirteen per cent of released defendants were rearrested and twenty per cent failed to appear). Cf. Note, Preventive Detention: An Empirical Analysis, 6 Harv. C.R.-C.L.L. Rev. 289 (1971). This fact, together with the delays between arrest and the conclusion of the trial and the denser population and greater anonymity of our communities since the time of the framings, argues for some form of preliminary relief for the government in incapacitating persons who pose a particular danger to the public. The necessary predicate that there be probable cause to believe that the person deemed dangerous has committed a serious crime offers a more substantial hurdle to the loss of liberty than some of the instances cited by the Supreme Court, and the conclusion of the trial itself provides an inevitable end point to the State's preventive authority. Finally, this very preventive authority may sometimes have been exercised sub rosa by the imposition of very high bail, which cannot be explained simply by the need to assure the accused's presence at trial and his noninterference with the pretrial process. See, e.g., *Snow* v. *Commonwealth*, 404 Mass. 1007 (1989) (upheld bail increase from $100,000 [$10,000 cash] to $500,000 [$50,000 cash] based on threat by defendant that he would kill three people if he were released on bail). Moreover, certain

quite traditional techniques, such as revocation of bail for misconduct, G. L. c. 276, § 58; *Delaney* v. *Commonwealth,* 415 Mass. 490 (1993), necessarily imply some authority to control the behavior of offenders before their guilt has been definitively adjudicated. It would be odd indeed if bail could be revoked for misconduct which is not tried to conviction but that the very misconduct which led to the original charge might not allow preliminary detention. It is one of the virtues of § 58A that the need for preliminary relief on account of dangerousness is addressed explicitly and both the Commonwealth and the accused may direct their arguments and proofs openly to that question.

In rejecting Mendonza's substantive due process claim, we reject the claim that a person accused of crime may never be detained on grounds of dangerousness prior to an adjudication of guilt in a criminal trial. In the balance of this opinion we consider the objections Mendonza makes to specific features of § 58A.[4]

## C

1. Mendonza argues that § 58A violates art. 12 in that the Commonwealth need only prove dangerousness by clear and convincing evidence instead of beyond a reasonable doubt. This argument is supported by our decisions that the civil commitment of dangerous persons as well as the commitment of sexually dangerous persons require the showing of

---

[4]Mendonza makes a separate argument that § 58A violates the prohibition in art. 26 against the requirement of excessive bail. Of course that provision is not literally applicable, since no bail — excessive or otherwise — has been required here at all. Mendonza's argument must be that it is a premise of art. 26 that in all cases some bail must be allowed, but that it must not be excessive. This argument is made more difficult at the outset by the unavoidable concession that there has never been a right to bail in capital cases, see *Carlson* v. *Landon,* 342 U.S. 524, 545-546 (1952); *Commonwealth* v. *Baker,* 343 Mass. 162, 167-168 (1961), so that one must try to patch up the argument by the contention that there is an inherent risk of flight in all capital cases. But in the end, the premise stands on no firmer ground than the principal structural argument against preventive detention in general which we reject. We note that the Body of Liberties (1641), which Mendonza invokes and which in its opening clauses gives some color to his structural argument, concludes with exceptions for "Crimes Capital, and Contempts in open Court, and in such cases where some expresse act of Court [that is, the General Court] doth allow it." *Commonwealth* v. *Baker, supra* at 165, quoting Bodies of Liberties, § 18.

dangerousness to be made beyond a reasonable doubt, while the Supreme Court has ruled in analogous circumstances that clear and convincing proof is sufficient to satisfy due process under the Fourteenth Amendment. *Addington* v. *Texas*, 441 U.S. 418, 423-433 (1979). In holding that proof beyond a reasonable doubt was required to commit sexually dangerous persons, we said, "we do not think that the Commonwealth can be permitted to label a person sexually dangerous and deprive him of his liberty for an indeterminate period which may extend over the rest of his natural life merely on proof that it is more likely than not that the person is sexually dangerous." *Andrews, petitioner*, 368 Mass. 468, 489 (1975). See *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 275-277 (1978) (requiring beyond a reasonable doubt standard to indefinite civil commitments). There is, however, a significant difference between the cases in which we have ruled that clear and convincing evidence is not sufficient to justify civil confinement and preventive detention under § 58A. Although the civil confinement of the dangerously mentally ill and sexually dangerous persons requires annual review under the same high standard of proof, the term of confinement is potentially indefinite and even lifelong. Indeed, the confinement under G. L. c. 123A (1994 ed.) is "for an indefinite period of a minimum of one day and a maximum of such person's natural life." G. L. c. 123A, § 5 (1994 ed.). Under § 58A, by contrast, the detention is limited and preliminary. The trial itself is the "main event," *Wainwright* v. *Sykes*, 433 U.S. 72, 90 (1977), at which the accused's liberty is definitively adjudicated. The better analogy, thus, is not to confinement of the dangerously mentally ill and sexually dangerous persons, but to the various temporary confinements authorized by G. L. c. 123 (1994 ed.) for observation or for emergency restraint. We have never suggested that proof beyond a reasonable doubt would be required for these temporary confinements.[5]

If there is sufficient constitutional warrant for the Legisla-

[5]General Laws c. 123, § 12 (1994 ed.), allows a ten-day emergency commitment based on a finding by a physician or psychologist of "reason to believe that failure to hospitalize such person would create a likelihood of serious harm." No judicial finding is required at all. The person can be confined for up to fourteen days more pending a full hearing if the superintendent of the facility petitions for a full commitment under §§ 7 and 8. G. L. c. 123, § 6. Section 15 (*b*) authorizes a twenty-day observation pe-

ture to institute pretrial detention, to require proof beyond a
reasonable doubt at the very early stage of the proceedings
when the Commonwealth is preparing its case on the merits,
which of course must eventually be proved beyond a reason-
able doubt, risks making this form of preliminary relief un-
available in practice.[6]

riod, which can be extended twenty more days at the request of a physician
or psychologist, for criminal defendants held on probable cause who are
suspected of being incompetent to stand trial or not criminally responsible
by reason of mental illness, on a finding by the judge of "reason to believe
that such observation and further examination are necessary." The only op-
portunity to be heard offered to individuals confined under §§ 12 and 15 is
the right to petition the Superior Court under § 9 for a hearing. This court
has interpreted § 9 (b) to place the burden on the defendant to show that
he should no longer be detained. *Thompson* v. *Commonwealth*, 386 Mass.
811 (1982) (determining the standard of proof under § 9 [b] where the pe-
tition is made between required annual reviews). In declining to reach the
validity of the procedures for temporary commitment, we stated that "[w]e
recognize the validity (even where there has been no notice or hearing) of
such a temporary commitment or an emergency commitment to assist in
the administration of justice may rest upon considerations different from
those affecting an indefinite commitment and that the opportunity for
prompt application for discharge [under a prior statute similar to § 9 (b)]
may be the most practicable method of affording judicial review of
temporary or emergency commitments." *Rohrer, petitioner*, 353 Mass. 282
(1967). Cf. *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 792
(1981) (this court has recognized that "proof beyond a reasonable doubt is
[not] constitutionally required in every commitment proceeding; the
Legislature retains some leeway to provide for protective or rehabilitative
confinement based upon a lesser standard of proof"). While this court has
never addressed the constitutionality of the temporary confinement
procedures of G. L. c. 123, courts in other jurisdictions have consistently
upheld similar procedures or, at most, required a postcommitment showing
of probable cause. E.g., *Doe* v. *Gallinot*, 657 F.2d 1017 (9th Cir. 1981)
(requiring only a probable cause hearing after seventy-two hours of emer-
gency confinement to retain dangerous mentally ill under observation until
full commitment hearing); *Logan* v. *Arafeh*, 346 F. Supp. 1265 (D.C. Conn.
1972), aff'd sub nom. *Briggs* v. *Arafeh*, 411 U.S. 911 (1973) (authorizing
emergency commitment up to forty-five days based on physician's certifica-
tion without hearing).

[6]Mendonza argues that in the circumstances of his particular case the ap-
plication of § 58A also violates the equal protection guarantees of the
Fourteenth Amendment and of art. 12. His contention is that, because the
determination of dangerousness in his case was based on circumstances that
tend to show he was mentally ill, it is a denial of equal protection to order
him detained only on clear and convincing proof of dangerousness while
under *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271
(1978), a civil commitment on the same ground requires proof beyond a

2. Mendonza also argues that the proceedings authorized by § 58A violate art. 12 because the rules of evidence do not apply in those proceedings. G. L. c. 276, § 58A (4). Of particular concern is the admissibility of hearsay evidence in such proceedings. More particularly still Mendonza insists that he should not suffer a deprivation of liberty on the basis of unreliable hearsay evidence. The assertion begs the question whether all hearsay evidence is so inherently unreliable that it may never form part of the Commonwealth's case in a § 58A hearing. The principle that governs this issue is stated in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950), and adopted by us in *Myers* v. *Commonwealth*, 363 Mass. 843, 854 (1973): "At the very least, due process of the law requires that deprivation of life, liberty or property by adjudication be preceded by notice and *opportunity for a hearing appropriate to the nature of the case*" (emphasis supplied).

In *Myers, supra* at 855-856, we did say that in a probable cause hearing "the defendant must be given the opportunity to cross-examine his accusers and present testimony in his own behalf in order to insure that the hearing's vital screening function will be effectuated." We held these procedural guarantees were "appropriate to the nature of the case," *id.* at 855, quoting *Goldberg* v. *Kelly*, 397 U.S. 254, 268 (1970). We also said "the rules of evidence at the preliminary hearing should in general be the same rules that are applicable at the criminal trial." *Myers, supra* at 849 n.6. However, the rules of evidence and more specifically the rules against the admission of hearsay evidence are not required in all proceedings. Article 12, like the Sixth Amendment, only grants the right to a defendant in a criminal proceeding to confront the witness offering the declaration. Thus even in a criminal trial, where the right of confrontation is at its zenith, there are numerous rules allowing the introduction of hearsay evidence. Furthermore, this court has sanctioned certain proceedings where the rules of evidence do not apply, even where deprivation of liberty is at stake as is the case here. *Commonwealth* v. *Durling,*

---

reasonable doubt. We have concluded that civil commitment proceedings under *Worcester State Hosp.* are sufficiently distinguishable from § 58A's preventive detention determination to allow the latter to proceed under a lesser burden of proof. That distinction is also sufficient to justify the different standards for purposes of equal protection. Indeed, the two objections are virtually identical and so is the answer to each.

407 Mass. 108, 114-119 (1990) (rules of evidence need not apply in a hearing for revocation of probation). The probable cause hearing serves to test the strength of the Commonwealth's case against an accused, while the pretrial detention hearing seeks only a flexible and reliable preliminary determination of dangerousness, and thus it is more "appropriate to the nature of [the probable cause] case," *Myers, supra* at 855, that the evidence in the probable cause hearings be judged by the same rules of admissibility as will govern the trial of the case. In *Myers* itself, the vice was not the introduction of hearsay testimony but the hearing judge's improper curtailment of the defendant's cross-examination of the complaining witness and presentation of his own evidence. *Id.* at 845. The proceeding under § 58A suffers from no such defects and allows counsel for the accused the fullest opportunity not only to cross-examine those witnesses produced by the Commonwealth but also to offer witnesses and evidence — including hearsay evidence — on the accused's behalf. That is how the Supreme Court interpreted the analogous Federal procedure, *Salerno, supra* at 751-752, and we are sure that § 58A allows at least as ample an opportunity for testing of, and response to, the Commonwealth's showing of dangerousness.

3. Mendonza argues that several differences between the Federal statute and § 58A rise to the level of constitutional defects.

a. The Federal Bail Reform Act may be invoked where the accused is charged with a crime of violence, a capital crime or a crime allowing life imprisonment, certain drug offenses for which the maximum sentence is ten or more years, or any listed felony if the accused has already been convicted of two or more of the listed offenses. 18 U.S.C. § 3142(f)(1). The Supreme Court in *Salerno* mentioned this limitation to serious crimes as one of the factors supporting the constitutionality of the Act. *United States* v. *Salerno, supra* at 747. The predicate offenses listed in § 58A (1) are defined somewhat differently but are also limited to serious crimes. Included are felonies that involve the use of force or attempted or threatened use of force. Subsection (1) goes on to include "any other felony that by its nature involves a substantial risk that physical force . . . may result . . . whether or not a person has been placed at risk thereof," and specifically lists

burglary and arson. This may exceed the scope of the Federal list in some cases, but the menace of dangerousness is plainly enough present in the excess that the statute does not raise constitutional doubts. Mendonza emphasizes the inclusion of what he designates as lesser offenses: violations of restraining orders to vacate the family house, to cease abuse, to protect the personal liberty of the other spouse and children, and to award child custody on an emergency basis. See G. L. c. 208, §§ 18, 34B, 34C; c. 209, § 32; c. 209A, §§ 3, 4, 5 (1994 ed.). That the list is more extensive than that in the Federal Bail Reform Act reflects the different roles of State and Federal law enforcement. Federal law enforcement is directed to specified crimes often having a significant national impact, while it is the States which have the primary and basic responsibility for assuring the ordinary conditions of peace, security, and good order in our communities. Offenses involving violence or threats of violence within the family are peculiarly within the province of State concern, so that it is no surprise that they were not included among the listed offenses in 18 U.S.C. § 3142(f)(1). Indeed, a distressing proportion of violent crimes, including homicides, are committed in domestic settings by persons well known to each other. See P. Claus & M. Ranel, United States Department of Justice, Bureau of Justice Statistics, Special Report: Family Violence (1984); Zorza, The Criminal Law of Misdemeanor Domestic Violence, 1970-1990, 83 J. Crim. L. & Criminology 46 (1992) (for example, thirty-one per cent of women murdered are killed by husbands, ex-husbands, or lovers). That these potentially lethal domestic offenses may sometimes be characterized as misdemeanors is of no significance.

b. Mendonza complains that § 58A, unlike the Federal statute, does not require a finding that there is probable cause to believe that the person to be detained has committed one of the predicate offenses. It is true that the Supreme Court in the *Salerno* case gave as one of the features of the Act that assured its constitutionality the requirement that "[t]he Government . . . first of all demonstrate probable cause to believe that the charged crime has been committed by the arrestee. . . ." *Salerno* at 750. But the provision to which Mendonza points as imposing that requirement, 18 U.S.C. § 3142(e), does not in fact explicitly set out any such general predicate finding. The Supreme Court ruled as it did because

the requirement is implicit in the scheme of the statute and in the system of pretrial procedures in which it is embedded. The same is true of § 58A: persons arrested without a warrant must be brought before a judicial magistrate without unreasonable delay (usually within twenty-four hours) and may not be further held unless the Commonwealth demonstrates probable cause for their arrest or a hearing is waived. *Jenkins* v. *Chief Justice of the Dist. Court Dep't,* 416 Mass. 221, 232, 237 (1993). Indeed, the provision for continuances in subsection (4), which we consider below, states explicitly that the accused may only be detained during the delay there granted if probable cause for his arrest has been demonstrated. In this case Mendonza had been indicted by a grand jury for the predicate offenses, and thus probable cause had been determined by the most constitutionally solemn means available.

c. The Federal statute instructs judges to consider the "nature and circumstances of the offense charged" and "the weight of the evidence against that person" in determining whether the accused should be detained. 18 U.S.C. § 3142(g)(1) and (2). Section 58A (5) directs the judge to consider, among other factors, "the nature and seriousness of the danger" posed by the accused and "the nature and circumstances of the offense charged," but does not mention the weight of the evidence regarding the predicate offense. This omission is without significance. As we have said, it must already have been established that there is probable cause to believe that the defendant has committed the crime, and we see no reason to ask the court to reconsider that issue on some other standard. The focus of the detention hearing quite properly is on the further question of dangerousness, which must be made out by clear and convincing evidence. The statute directs the courts to the factors that bear on the rational determination of that issue.

4. The judge detained Mendonza on a finding that there was clear and convincing evidence that "no conditions of release will reasonably assure the safety of others, namely the defendant's spouse and children." Mendonza complains that there was, however, no evidence that he had ever harmed his wife or children. We do not take him to be arguing that clear and convincing evidence of danger to his family was lacking, and if he is, we reject that argument. Rather it seems that Mendonza is arguing that the Commonwealth must show

some nexus between the dangerousness of the charged offenses and the danger the accused might present if left at large. The statute does not require such a nexus, although it does direct attention, as we have said, to the nature and circumstances of the offense charged as relevant to the issue of dangerousness. Nor do we see any constitutional reason to insist on such a nexus. A person charged with burglary of an inhabited dwelling at nighttime, for example, may be detained if it is shown that he may harm others in quite different settings. The statistics on crimes committed by persons awaiting trial do not show any close correlation between the crimes of which they stand accused and the further crimes they may commit. E.g., Note, Preventive Detention: An Empirical Analysis, 6 Harv. C.R.-C.L.L. Rev. 289, 294 (1971); Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics 445 (1995). In any event, there was a close connection between the offenses with which Mendonza was charged and a potential threat to his family. One of those offenses was violation of a protective order protecting Mendonza's family and ordering Mendonza to vacate the family home. The alleged assault on the police officers occurred in the family home when the officers ordered Mendonza to vacate the house to protect the family.

## III

Callender makes a different and narrower claim. Conceding arguendo the constitutionality of § 58A in all other respects, Callender challenges the provision in § 58A (4) which appears to give the Commonwealth an extension of three business days more or less for the asking, during which time an accused is detained simply on the showing that there was probable cause to arrest him. The analogous provision in 18 U.S.C. § 3142(f)(2) is similarly worded: it states that "[e]xcept for good cause . . . a continuance on motion of the attorney for the Government may not exceed three days . . ." [d]uring . . . [which] the person shall be detained . . . ." The Supreme Court in *Salerno* did not address that provision, nor has it passed on it explicitly since.[7] In the absence of any express intimation on the meaning and constitutionality of

---

[7] The Commonwealth argues that the Supreme Court's decision in *United States* v. *Montalvo-Murillo*, 495 U.S. 711 (1990), implicitly endorsed the three-day provision in the Federal statute. The Court there had before it

this provision by the Supreme Court we must make our own determination. If we should be wrong on either score, we make clear that our decision is based on our construction of § 58A and the demands of art. 12 as well. *Michigan* v. *Long*, 463 U.S. 1032 (1983).

The Commonwealth's expansive reading of the continuance provision raises serious constitutional concerns. We have just considered Mendonza's arguments that the Declaration of Rights and our constitutional traditions do not allow the State to deprive a person of his liberty except on conviction or other determination of dangerousness made beyond a reasonable doubt. We did not reject those arguments because we thought them frivolous or far-fetched but because, in spite of their considerable force, they are too absolute. We concluded that on balance the Declaration of Rights, which may be more but is certainly not less protective than the Federal Constitution, allows preventive detention in carefully circumscribed circumstances and subject to quite demanding procedures. The Commonwealth's burden to prove dangerousness by clear and convincing evidence is an important part of those procedures. One of the reasons we did not require an even higher standard of proof is that detention under § 58A is temporary and provisional.

Having engaged in such a careful balancing in respect to those claims we cannot, without more, admit that any detention of a person after his required first appearance, at which probable cause is determined, can be permitted on so casual and untested a basis.[8] Even a brief street stop in the most difficult circumstances requires a justification by reasonable

---

the issue whether release of the detainee was the appropriate remedy for the failure to conduct a timely hearing as required by 18 U.S.C. § 3142(f), and in the course of its decision stated: "a vital liberty interest is at stake. A prompt [dangerousness] hearing is necessary, and the time limitations of the Act must be followed with care and precision." *Id.* at 716. That does not even come close to being an implicit endorsement of the constitutionality of detention during an automatic three-day continuance. Constitutional issues are not settled by such indirection.

Several lower Federal courts have addressed the provision, construed it as the Commonwealth construes the analogous provision in § 58A, but did not address the constitutionality of the continuance provision. See, e.g., *United States* v. *Lee*, 783 F.2d 92 (7th Cir. 1986); *United States* v. *O'Shaughnessy*, 764 F.2d 1035 (5th Cir. 1985).

[8]*Jenkins* v. *Chief Justice of the Dist. Court Dep't,* 416 Mass. 221 (1993), requires a probable cause hearing within twenty-four hours of a warrantless

suspicion. *Terry* v. *Ohio*, 392 U.S. 1 (1968). The judge who reported this question to us stated:

> "While no empirical analysis has been performed, this Court is well aware of numerous instances where the Commonwealth has filed the original petition pursuant to s. 58A(4), as well as the request for the three-day continuance pursuant to s. 58A(4), and after the three-day detention and at the time of the hearing, has withdrawn its petition. The criminal defendant has been detained for a period of three days without any preliminary showing of dangerousness or without any hearing simply upon the filing of the petition."

The Commonwealth did not address this allegation, nor have we been pointed to any other discussion of it. However general such a practice may or may not be, it is a vice of the Commonwealth's contention that like any other form of unilateral and untested (either before or after the fact) exercise of power it invites abuse. We need not belabor the point: the Commonwealth's contention is so extreme that we shall not construe the statute to underwrite it.

There is, to be sure, another side to the issue. Callender himself goes too far in suggesting that, if § 58A is generally valid, then any detention, even that during which the Commonwealth is gathering its evidence to make a clear and convincing showing of dangerousness, must also be justified by clear and convincing evidence of dangerousness. In many situations where the threat of danger looms, particularly where the police make an arrest shortly after learning of the commission of a serious and violent crime, the brief period of time allowed before first appearance will not suffice for this further purpose. The police may know enough to establish probable cause that such a crime has been committed and

___

arrest. "Where [twenty-four hour time period] is exceeded, the police must bear the burden of demonstrating that an extraordinary circumstance caused the delay." *Id.* at 238. After getting on the trial calendar, the Commonwealth may only obtain a continuance on a showing of "cause" and "only when [the continuance is] necessary to insure that the interests of justice are served." Mass. R. Crim. P. 10 (a) (1), 378 Mass. 861 (1979). The Commonwealth may not get a continuance beyond thirty days, even for cause, where the defendant is in custody and objects. G. L. c. 276, § 35, as amended by St. 1996, c. 211.

that the arrested person committed it. They may also have grounds for concern that this person presents a continuing danger, but not nearly enough to meet the high burden of § 58A. The statute allows detention during a continuance to meet just such cases. To require that the arrested person be released pending that further inquiry may invite a sub rosa relaxation of the clear and convincing standard.

The sensible reading of the continuance provision is to allow such a three-day continuance at the request of the Commonwealth only if the Commonwealth can show good cause for it. Such a reading would meet the serious constitutional doubts raised by the automatic stay for which the Commonwealth argues. The judge should then make a specific finding that such cause has been shown and what such cause is.

## IV

We affirm the judgment of the single justice as to Mendonza's claim. As to Callender, the answer to the question reported to us is that properly construed to require good cause § 58A (4) is not unconstitutional.

*So ordered.*