NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12008
SJC-12009


COMMONWEALTH  vs.  MARCEL A. DIGGS.

COMMONWEALTH  vs.  DAMIANE K. SOTO.



Suffolk.     April 7, 2016. - July 29, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.[1]



Bail.  Arrest.  Statute, Construction.



Civil actions commenced in the Supreme Judicial Court for
the county of Suffolk on November 9 and 17, 2015.

The cases were reported by Spina, J.


Edward Crane for the defendants.
Jamie Michael Charles, Assistant District Attorney, for the
Commonwealth.
Timothy J. Cruz, District Attorney, & Robert C. Thompson,
Assistant District Attorney, for the Commonwealth, amicus
curiae, submitted a brief.


DUFFLY, J.  The defendants, Marcel A. Diggs and Damiane K.

---

[1] Justice Duffly participated in the deliberation on this
case and authored this opinion prior to her retirement.

Soto, challenge orders for pretrial detention imposed by District Court judges after hearings at which the judges concluded that each defendant was dangerous within the meaning of G. L. c. 276, § 58A (dangerousness statute). Under that statute, a person "held under arrest" on charges of one of an enumerated list of offenses may be subject to "a hearing to determine whether conditions of release will reasonably assure the safety of any other person or the community." G. L. c. 276, § 58A (4). The defendants argue that neither of them was "held under arrest" within the meaning of G. L. c. 276, § 58A (4), when they appeared in court to be arraigned, and therefore that they could not lawfully be subjected to a pretrial detention hearing. The defendants each filed petitions for extraordinary relief pursuant to G. L. c. 211, § 3, in the county court. The single justice ordered the matters joined and reserved and reported them to the full court.

We conclude that where a criminal defendant has been arrested or is subject to an outstanding arrest warrant for an enumerated offense, the defendant may be subject to pretrial detention under G. L. c. 276, § 58A (4), even if the defendant is not held in custody following the arrest, so long as the dangerousness hearing takes place "immediately upon the person's

first appearance before the court."[2]  Id.  Accordingly, we affirm the orders of pretrial detention.

Background.  1.  Damiane Soto.  Soto was arrested on charges of assaulting and threatening his pregnant girl friend, in violation of G. L. c. 265, § 13A, and G. L. c. 275, § 2.[3] After he was booked at the Marlborough police station, Soto posted bail, which had been set at $1,000.  Two days later, a criminal complaint issued charging Soto with the offenses alleged.  That same day, when Soto appeared in court as required, the Commonwealth moved for an order of pretrial detention under the dangerousness statute.  Soto argued that he could not be detained because he had been released on bail following his arrest, and therefore he was not "held under arrest" when he appeared for arraignment.  The judge rejected

---

[2] As we observed in Mendonza v. Commonwealth, 423 Mass. 771, 780 (1996), the Commonwealth bears a "heavy burden" to satisfy G. L. c. 276, § 58A, and therefore to subject an individual to pretrial detention.  The Commonwealth must establish by clear and convincing evidence that "no conditions of release will reasonably assure the safety of any other person or the community."  G. L. c. 276, § 58A (3).

[3] General Laws c. 276, § 58A (1), provides, in relevant part, that "[t]he [C]ommonwealth may move, based on dangerousness, for an order of pretrial detention . . . [for] a violation of an order pursuant to . . . [G. L. c. 209A, §§ 3, 4, 5,] . . . or arrested and charged with a misdemeanor or felony involving abuse as defined in [G. L. c. 209A, § 1]."  The Commonwealth sought pretrial detention on the theory that the offenses for which Soto was charged are enumerated offenses because they are misdemeanors involving "abuse" of a "family or household member" as defined in G. L. c. 209A, § 1.  Soto does not dispute this contention.

Soto's challenge to the legality of the proceedings, conducted a dangerousness hearing, and ordered Soto held without bail pursuant to G. L. c. 276, § 58A (4).

2. Marcel Diggs. Diggs allegedly threatened to burn down a house belonging to the mother of his former girl friend, while the family was inside. Following the threat, the former girl friend filed a report with the Watertown police department and sought a restraining order against Diggs. A summons was issued based on these events, and on the following day, a criminal complaint issued charging Diggs with threatening to commit a crime, G. L. c. 275, § 2.[4] Shortly thereafter, following a review of Diggs's criminal history, a Watertown police officer obtained an arrest warrant for Diggs. Diggs, however, had no fixed address at that point, and police were unable to locate him to execute the arrest warrant.

Several months later, Diggs was held on a probation detainer in Plymouth County for violating the terms of his probation in an unrelated matter. When authorities from the Plymouth County house of correction transported Diggs to the District Court to appear for arraignment on those charges, the Commonwealth moved for pretrial detention based on dangerousness. Diggs argued that he was not subject to pretrial

---

[4] Diggs does not dispute the Commonwealth's assertion that a violation of G. L. c. 275, § 2, is an enumerated offense under the dangerousness statute.

detention because, although he was in the custody of Plymouth County on charges of a probation violation, he had not been arrested by the Watertown police in connection with the complaint charging him with threatening to commit a crime, and thus was not "held under arrest" for an enumerated offense at the time of his arraignment. The judge rejected Diggs's challenge to the legality of the proceedings, conducted a dangerousness hearing pursuant to G. L. c. 276, § 58A, and ordered Diggs held in pretrial detention without bail.

Discussion. Whether the defendants were "held under arrest," such that the Commonwealth lawfully could seek dangerousness hearings under G. L. c. 276, § 58A, at the time of their arraignments, is a question of statutory interpretation. We review questions of law, such as statutory interpretation, de novo. Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 719 (2002). "Our task is to interpret the statute 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" O'Brien v. Director of the Div. of Employment Sec., 393 Mass. 482, 487-488 (1984), quoting Industrial Fin. Corp. v. State Tax Comm'n, 367 Mass. 360, 364 (1975). To the

extent that the Legislature's intent is clear, "the statute, if reasonably possible, must be construed to carry out that intent." Automobile Insurers Bur. of Mass. v. Commissioner of Ins., 425 Mass. 262, 267 (1997), quoting Industrial Fin. Corp. v. State Tax Comm'n, supra. Because we assume generally that the Legislature intends to act reasonably, "[w]e will not adopt a literal construction of a statute if the consequences of such a construction are absurd or unreasonable." Champigny v. Commonwealth, 422 Mass. 249, 251 (1996), quoting Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982).

General Laws c. 276, § 58A (4), provides in relevant part:

> "When a person is held under arrest for an offense listed in subsection (1) and upon a motion by the [C]ommonwealth, the judge shall hold a hearing to determine whether conditions of releases will reasonably assure the safety of any other person or the community."

The statute does not define the meaning of "held under arrest" for purposes of this subsection. Relying on dictionary definitions of the word "arrest," the defendants argue that a defendant is held under arrest when he or she is arrested and held in physical custody by a legal authority. The defendants also point to the United States Court of Appeals for the Ninth Circuit's decision in United States v. Leal-Felix, 665 F.3d 1037, 1041 (9th Cir. 2011), in which the court interpreted the word "arrest," as used in the United States sentencing guidelines, to mean the process by which the police inform a

suspect that she or he is under arrest, transport the suspect to the police station, and book the suspect into jail. The defendants argue that they were not subject to pretrial detention hearings because neither of them was arrested and in the custody of the arresting authorities at the time of arraignment.

The Commonwealth contends that such a construction of the statute would contravene the intent of the Legislature. It proffers the following hypothetical. Three suspects, all with identical criminal records demonstrating a history of violent offenses, jointly commit an armed robbery. One suspect is arrested immediately and brought before the court for arraignment. The second suspect is arrested after the District Court has closed for the day, and subsequently released on bail with instructions to report to court the next day. The third suspect evades arrest, and an arrest warrant issues. That suspect is later arrested in another jurisdiction for an unrelated offense, and eventually is brought before the court to remove the warrant for the armed robbery. Under the defendants' proposed construction of the phrase "held under arrest," only the first suspect would be subject to a dangerousness hearing, even though all three suspects have the same criminal histories and are charged with the commission of the same enumerated offense. The Commonwealth maintains that the Legislature could

not have intended this outcome.

We agree that construing the phrase "held under arrest" in a strictly literal sense would thwart the dangerousness statute's intended purpose to protect the public from dangerous individuals who are awaiting trial for a specified set of offenses that include, as here, offenses involving the abuse of family members.  See Commonwealth v. Young, 453 Mass. 707, 709 (2009), quoting Mendonza v. Commonwealth, 423 Mass. 771, 780 (1996) ("The pretrial detention regime in [G. L. c. 276], § 58A[,] 'is explicitly predictive and seek[s] systematically to identify those who may present a danger to society and to incapacitate them before that danger may be realized'"); G. L. c. 276, § 58A (1) (listing enumerated offenses).

The Legislature enacted G. L. c. 276, § 58A, in the wake of this court's decision in Aime v. Commonwealth, 414 Mass. 667, 682 (1993), which struck down the prior regime of pretrial detention in part because it did not afford sufficient procedural protections to individuals before they were subject to pretrial detention.[5]  See 1994 House Doc. No. 4305.  The

---

[5] In Aime v. Commonwealth, 414 Mass. 667, 682 (1993), we struck down G. L. c. 276, § 58, as amended through St. 1992, c. 201, § 3, the predecessor to G. L. c. 276, § 58A, because we concluded that the statute as written violated the due process clause of the Fourteenth Amendment to the United States Constitution.  The predecessor statute applied to all persons arrested or subject to arrest, regardless of the seriousness of the offense charged; it did not require the Commonwealth to

Governor proposed the new form of the dangerousness statute,

originally entitled, "An Act to reduce crime committed by

defendants awaiting trial," to the Legislature.[6]  In his letter

to the House of Representatives and the Senate accompanying the

proposed bill, the Governor explained that the bill would cure

the procedural defects of the prior statute, and commented,

> "Government has no more important obligation than protecting the safety of its citizens, and yet dangerous arrestees who clearly pose an ongoing danger to our community too often are released out on bail or personal recognizance.  Innocent lives, particularly the lives of women victimized by domestic violence continue to be put at risk.  This legislation is critical to our ability to reduce, if not eliminate, that risk."

Id.  The Legislature approved House Bill No. 4305 on July 14,

1994.[7]  See St. 1994, c. 68.

The phrase at issue here, "held under arrest," was included

---

prove dangerousness by any specific standard of proof; and it did not provide the individual with the right to be heard, to cross-examine witnesses, or to counsel.  In Mendonza v. Commonwealth, 423 Mass. at 780-788, we concluded that the amended version of the dangerousness statute, at issue here, provided adequate procedural protections by limiting its application to situations where there was probable cause to believe that an individual had committed certain enumerated offenses, requiring the Commonwealth to prove dangerousness by clear and convincing evidence, and affording a right to a hearing and the right to counsel.

[6] The title subsequently was changed to "An Act relative to the release on bail of certain persons."  See St. 1994, c. 68.

[7] Enactment of G. L. c. 276, § 58A, followed public debate on a widely publicized killing of a woman by her husband, who had been released on bail following an earlier attack against her.  See Killing of Malden Woman Ignites Fight on Bail Reform, Boston Globe, May 9, 1994.

in the Governor's proposed bill, and the Legislature adopted
that provision virtually verbatim.  See 1994 House Doc.
No. 4305; St. 1994, c. 68, § 6.  Based on this, we conclude that
the Legislature enacted G. L. c. 276, § 58A, with the intent of
protecting the public from the potential harm posed by persons
who have been arrested or are subject to arrest, who have been
found to be dangerous.  See Mendonza v. Commonwealth, supra at
781 (fact that "a surprising percentage of crimes are committed
by persons awaiting trial" provided support for Commonwealth's
need to detain "persons who pose a particular danger to the
public").

Given this explicitly articulated purpose to protect the
public, it is unlikely that the Legislature intended to draw
arbitrary distinctions between individuals who have been
released on bail by a magistrate, those who are arrested and in
physical custody, and those for whom an arrest warrant has
issued, but has not been executed.  See Reade v. Secretary of
the Commonwealth, 472 Mass. 573, 578 (2015), cert. denied, 136
S. Ct. 1729 (2016), quoting Watros v. Greater Lynn Mental Health
& Retardation Ass'n, 421 Mass. 106, 113 (1995) ("[I]t is a well-
established cannon of statutory construction that a strictly
literal reading of a statute should not be adopted if the result
will be to thwart or hamper the accomplishment of the statute's
obvious purpose, and if another construction which would avoid

this undesirable result is possible").

We are not persuaded by the defendants' assertion that the Legislature intended to draw such a distinction in order to encourage defendants who have been released on bail, or who have not yet been arrested, to appear in court, rather than to default. Nothing in the language, structure, or history of the dangerousness statute suggests that the use of the phrase "held under arrest" indicates a legislative intent to provide an incentive to persons who have been arrested or are subject to arrest, but who are not in custody, to appear in court. Moreover, the Legislature has criminalized the failure to appear in court after release on bail, thereby providing an explicit disincentive for an individual to default. See G. L. c. 276, § 82A. Adopting the defendants' proposed construction would thwart the legislative purpose to permit a judge to determine whether someone charged with a crime is sufficiently dangerous so as to warrant detention while awaiting trial, or whether additional safeguards are required in order to allow the individual to be admitted to bail while protecting the public. See Commonwealth v. Scott, 464 Mass. 355, 358 (2013), quoting Opinion of the Justices, 313 Mass. 779, 782 (1943) ("the construction of a word or phrase may vary from its plain meaning when such a meaning would 'involve a construction inconsistent with the manifest intent of the law-making body or repugnant to

the context of the same statute").

In sum, the phrase "held under arrest," within the meaning of G. L. c. 276, § 58A (4), refers to any person who has been arrested or for whom an arrest warrant has issued in connection with one of the enumerated offenses in G. L. c. 276, § 58A (1). Under this construction, both defendants were "held under arrest," and therefore properly were subject to a dangerousness hearing pursuant to G. L. c. 276, § 58A (4), where each hearing was held "immediately upon the person's first appearance before the court."

Orders for pretrial
detention affirmed.