**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 92-4602

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY JEFFERSON BYRD,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Louisiana

(August 7, 1992)

Before JOLLY, JONES and WIENER, Circuit Judges.

B Y   T H E   C O U R T :

In our Order of June 22, 1992, we treated the motion filed by Defendant-Appellant Gary Jefferson Byrd as a motion for expedited appeal, under Federal Rule of Appellate Procedure 9(a) and Loc. Rule 9.1, from an order of the district court that (1) reversed the magistrate judge's order of pre-trial release of Dr. Byrd on conditions specified therein, and (2) committed Dr. Byrd to

detention pending trial.  In so doing we stated that "[w]ritten reasons for the orders hereinabove granted shall follow as soon as practicable."  We offer those reasons now.

I

FACTS AND PROCEEDINGS

Defendant-Appellant Gary Jefferson Byrd, M.D., a psychiatrist residing in Opelousas, Louisiana, was indicted by a federal grand jury on April 16, 1992, for violating 18 U.S.C. § 2252(a)(2).  The indictment charged that Dr. Byrd knowingly received through the mail a video tape containing depictions of persons under the age of 18 "engaged in a sexually explicit conduct."

Interestingly, the offense charged in the indictment, i.e., receiving a proscribed video tape through the mail, is alleged to have occurred on July 29, 1987, just three months shy of five years prior to the indictment.  There is no indication that during those years the federal prosecutors did anything to move the case to indictment and trial.  There are indications in various exhibits, however, that during at least part of that hiatus Dr. Byrd (whose license to practice medicine in Louisiana was revoked after the 1987 incident) was pursued in state civil and criminal court proceedings on claims and charges involving the molestation of young boys.  There is no information to suggest that, at any time during those years, Dr. Byrd was ever in detention.  To the contrary, it appears that, although Dr. Byrd lost considerable assets and earning power as a result of his legal problems, he continued to remain unincarcerated in Opelousas, working

2

professionally with law firms in that vicinity.  It also appears that all state criminal charges relating to indecent behavior with or sexual molestation of young males were ultimately dismissed.

It is against that backdrop that, for reasons not apparent from the limited record before this court, the office of the United States Attorney for the Western District of Louisiana renewed its interest in Dr. Byrd's case, resulting in his indictment on April 16, 1992.  An arraignment followed on May 6, 1992, at which the government asked for a detention hearing under 18 U.S.C. § 3142(f).  That hearing was held at 9:00 a.m. on May 8, 1992, at Lafayette, Louisiana.  The government urged that Dr. Byrd be detained pursuant to § 3142 as a danger to the community, but put on no evidence of community danger.  The defense, however, adduced testimony of numerous experts and lay witnesses that tended to negate both the risk of flight and danger to the community.  The government stipulated to no risk of flight.

Following completion of that § 3142(f) hearing, the magistrate judge denied detention and ordered Dr. Byrd released on a $100,000.00 unsecured recognizance bond, subject to numerous conditions of release consistent with § 3142(c), including but not limited to travel restriction, periodic reporting to the probation officer, no weapons possession, medical or psychiatric treatment as ordered by the court, surrender of passport, obtaining no passport, and "refrain[ing] from any and all social or physical contact whatsoever with any minor child absent the supervision of the minor's legal custodian."

3

That afternoon the government appealed the magistrate judge's order to the district court, pursuant to 28 U.S.C. § 646(b)(1)(a). The government asserted that when the search warrant for the subject video tape was executed in July of 1987 there were "two young children in the house, both of whom stated that they had been sexually molested by the defendant. . ."; "[p]addles and photographs of nude children were also discovered in the house. . . . In 1987, state charges for molestation of juveniles was [sic] filed. During the time when those charges were pending, the defendant. . . continued to regularly molest two children." The government also asserted that during the detention hearing a psychiatrist testified that a person who molests children not within his immediate family, but rather from the community, is a substantial danger to the community."

A copy of the government's Friday filing was served on Dr. Byrd's then-counsel around midday the following Monday, May 11, 1992. Late that afternoon Byrd's then-counsel filed a response, pointing out that the government's alleged evidence of paddles and photographs of nude children are "in no way connected" to the federal charge against Dr. Byrd and do not violate any state or federal law; that there was no evidence of continued child molestation against Dr. Byrd but, to the contrary, that there was testimony of witnesses in subsequent instances that no molestation occurred; that there was a recanting of prior testimony of molestation; that there was testimony by a highly credentialed physician that Dr. Byrd is not a pedophile; that Dr. Byrd had never

4

been detained on state charges; and that the pre-trial service officer assigned to the case had recommended release of Dr. Byrd on the conditions set forth in her report. The filing by Dr. Byrd's then-counsel pointed out that as a matter of law the federal crime for which Dr. Byrd had been indicted meets none of the criteria that create presumptions favoring detention under § 3142.

At the hearing on Wednesday, May 13th, the district court listened to audio tapes of the May 8th hearing before the magistrate judge, heard some live testimony, and then, at the close of the hearing, took physical delivery of numerous boxes containing volumes of documents and records seized from Dr. Byrd's residence during execution of the search warrant in July of 1987. Counsel for Dr. Byrd had not been informed that such evidence would be introduced, and was afforded no opportunity to review it. Those records had not been presented to the magistrate judge. They were, however, delivered under seal to the district court, removed to chambers, and reviewed selectively, in camera, for several hours, after which the district court concluded that Dr. Byrd should be detained pending trial as a "danger to the most vulnerable segment of the population, small children."

Concluding that "there are no conditions of release that would adequately protect this segment of the community that is in most need of protection," the district court found, under 28 U.S.C. § 636(B)(1)(a) that the ruling of the magistrate judge was "clearly erroneous as a matter of law." Based on selected portions of the evidence received at the conclusion of the hearing on May 13, 1992,

5

when the defense had no opportunity to view it much less controvert it, the district court reversed the magistrate judge largely on the strength of that "uncontroverted evidence" and ordered Dr. Byrd detained pending trial.

II

ANALYSIS

The Bail Reform Act of 1984[1] sets out the procedure for pre-trial release and pre-trial detention. The First Circuit, in United States v. Ploof, 851 F.2d 7 (1st Cir. 1988), discussed how the Bail Reform Act is implemented:

> The Bail Reform Act directs the judicial officer to order pre-trial release on personal recognizance or upon the execution of an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the preceding terms will not reasonably assure appearance or will endanger safety, then the judicial officer is directed to consider a number of conditions to be attached to a release order. 18 U.S.C. § 3142(c). Only "[i]f, after a hearing pursuant to [§ 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," shall the judicial officer order detention. § 3142(e). Section 3142(f), which is central to the present appeal, in turn specifies certain conditions under which a detention hearing shall be held....
>
> Section 3142(f) provides in material part as follows:
>
> (f) Detention hearing. The judicial officers shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person

---

[1] 18 U.S.C. §§ 3141 et seq.

as required and the safety of any other person and the community -

(1) upon motion of the attorney for the Government, in a case that involves -

(A) a crime of violence;
(B) an offense for which the maximum sentence is life imprisonment or death;
(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Expert Act (21 U.S.C. 951 et seq.), or [the Maritime Drug Enforcement Act (46 U.S.C. App. 1901 et seq.)]; or
(D) any felony if the person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been defenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves -

(A) a serious risk that the person will flee; or
(B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, inure, or intimidate, a prospective witness or juror.

In other words, § 3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the [six circumstances listed in (f)(1)(A), (f)(1)(B), (f)(1)(C), (f)(1)(D), (f)(2)(A) and (f)(2)(b)].

Id. at 9-10.

A hearing can be held only if one of the six circumstances listed in (f)(1) and (2) is present; detention can be ordered only after a hearing is held pursuant to § 3142(f). Detention can be

7

ordered, therefore, only "in a case that involves" one of the six circumstances listed in (f), and in which the judicial officer finds, after a hearing, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. The First and the Third Circuits have both interpreted the Act to limit detention to cases that involve one of the six circumstances listed in (f). See Ploof, 851 F.2d at 11; United States v. Himler, 797 F.2d 156, 160 (3rd Cir. 1986). Both Circuits held that a person's threat to the safety of any other person or the community, in the absence of one of the six specified circumstances, could not justify detention under the Act. There can be no doubt that this Act clearly favors nondetention. It is not surprising that detention can be ordered only after a hearing; due process requires as much. What may be surprising is the conclusion that even after a hearing, detention can be ordered only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety. Nevertheless, we find ourselves in agreement with the First and Third Circuits: a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention.

In the case before us, the government requested a detention hearing and urged that Dr. Byrd be detained on the grounds that he was a danger to the community. The government has not shown, however, that **any** one of the six listed circumstances that warrants pre-trial detention is present in this case.

8

Assuming that the government has shown that there is no combination of release conditions that will reasonably assure the safety of other persons and the community, Dr. Byrd could have been detained only if the government had also established that the case against him involves a crime of violence. Dr. Byrd is charged with receiving a videotape in the mail, a tape which depicts minors engaged in sexually explicit activity. The crime thus charged is obviously passive and is not in and of itself a crime of violence. Nevertheless, by demonstrating child molestation--an act of violence--by Dr. Byrd, and that such specific act or acts are reasonably connected to the specific offense with which he is charged, the government could have established that Dr. Byrd's is "a case that involves a crime of violence." In other words, it is not necessary that the charged offense be a crime of violence; only that the case involve a crime of violence or any one or more of the § 3142(f) factors. But the proof of a nexus between the non-violent offense charged and one or more of the six § 3142(f) factors is crucial.

On the record before us the government has failed to prove that the case against Dr. Byrd involves a crime of violence. That Dr. Byrd may have molested minors not connected with the specific offense now against him, or that young boys and pornography in addition to the subject videotape were present at Dr. Byrd's premises when the warrant for the mailed tape was executed, or that expert witness testimony supports that he will likely molest children once released, do not satisfy the nexus or involvement

9

requirement of this Act for detaining a defendant before his conviction.

There is no doubt that the Act places a risk on society: a defendant who clearly may pose a danger to society cannot be detained on that basis alone. In such instances, the Act requires that society's interest be safeguarded only by a set of conditions imposed on his release.

If the defendant breaches a term of his release, however, the government may initiate a proceeding to revoke his release. § 3148. Therefore, notwithstanding our holding today, we caution Dr. Byrd and remind the government, the magistrate judge, and the district court that the provisions of 18 U.S.C. § 3142 do not contemplate finality or *res judicata* on the issue of pre-trial detention. The magistrate judge or the district court "may at any time amend the order to impose additional or different conditions of release" as provided in § 3142(c)(3). Moreover, "[t]he hearing may be reopened ... at any time before trial, if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure ... the safety of any person and the community" as provided in the last sentence of subsection (f). Such a reopener would be proper in this case only if the information implicated one of the six circumstances listed in § 3142(f).

## CONCLUSION

Under the scheme of the Bail Reform Act, pre-trial detention

10

requires a detention hearing. A detention hearing can only be held in a case that involves a crime or circumstance set out in § 3142(f) of the Act. On the record before us, Dr. Byrd's case involves none of these crimes or circumstances. Therefore, as the fact that Dr. Byrd may pose a threat to the community is not, standing alone, a sufficient basis to detain him before conviction, his detention is not authorized by the Act.

The district court's order of May 13, 1992, is therefore VACATED, and the magistrate judge's order of May 8, 1992, is REINSTATED.