**UNITED STATES of America**

v.

**Robert Randall REINHART.**

**CRIMINAL No. 97–60030–01.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Aug. 11, 1997.

Michael D. Singletary, Lafayette, LA, for Robert Randall Reinhart.

Brett L. Grayson, U.S. Attorney's Office, Lafayette, LA, for U.S.

## MEMORANDUM RULING ON PRETRIAL DETENTION

METHVIN, United States Magistrate Judge.

Following a hearing on August 6, 1997, the undersigned magistrate judge ordered defendant's detention pending trial. The findings of fact and statement of reasons for detention required by 18 U.S.C. § 3142(i)(1) are set forth below.

### A. Authority to Issue a Detention Order under 18 U.S.C. § 3142(f); Effect of Byrd

Defendant Robert Reinhart and his co-defendant Matthew Carroll are charged in a thirteen-count indictment with various crimes involving sexual exploitation of children. Reinhart is charged in all thirteen counts as follows: [1]

**Count 1:** Conspiracy to "employ, use, persuade, and induce persons under the age of eighteen (18) years to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, knowing that such visual depictions will be transported in interstate or foreign commerce ..." in violation of 18 U.S.C. § 2251.

**Counts 2–11:** Distribution of computer images, the production of which involved "the use of a minor engaging in sexually explicit conduct" and which visual depictions had been transported in interstate and international commerce, in violation of 18 U.S.C. § 2252(a)(2).

**Count 12:** Use of persons under the age of eighteen "to engage in sexually explicit conduct, specifically, anal-genital and oral-genital sexual intercourse and the lascivious exhibition of the genitals and the pubic area of said minors for the purpose of producing visual depictions of such conduct, specifically a video tape

..." which had been transported in interstate commerce in violation of 18 U.S.C. § 2251(a) and 2.

**Count 13:** Forfeiture of property involved in the alleged crimes, 18 U.S.C. § 2253.

A threshold issue is the authority of the court to issue a detention order in light of *United States v. Byrd,* 969 F.2d 106 (5th Cir.1992). In that case, Dr. Byrd, a psychiatrist, was charged with receiving child pornography in the mail in violation of 18 U.S.C. § 2252(a)(2)—the same statute charged in Counts 2 through 11 of the instant indictment. In *Byrd,* the Fifth Circuit held that the government failed to show that the charge was a "crime of violence" which would authorize detention under the Bail Reform Act. Nor did any of the other five factors authorizing detention under the Act apply.

The court found that a person's threat to the safety of any other person or the community, in the absence of one of the six circumstances specified by the Act, did not justify detention under the Act. *Id.* at 109, *citing United States v. Ploof,* 851 F.2d 7, 11 (1st Cir.1988) and *United States v. Himler,* 797 F.2d 156, 160 (3rd Cir.1986).

The court stated:

There can be no doubt that this Act clearly favors nondetention. It is not surprising that detention can be ordered only after a hearing; due process requires as much. What may be surprising is the conclusion that even after a hearing, detention can be ordered only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety.

*Byrd,* 969 F.2d at 109–110. The court therefore vacated the detention order entered by the district court.

I conclude that the facts presented in *Byrd* are distinguishable from those presented in the instant case, and that the government has established the necessary nexus between the crimes charged and crimes of violence on the part of defendants.

---

1. Carroll is charged only in Counts 1, 12, and 13.

In *Byrd,* the government argued that the charge against Dr. Byrd—receiving a videotape of child pornography in the mail—involved a crime of violence under § 3142(f)(1)(A) because when the search warrant for the videotape was executed, there were two young children in the house, both of whom stated that they had been sexually molested by Dr. Byrd. Paddles and photos of nude children were also discovered in Dr. Byrd's house. The government also contended that Dr. Byrd had continued to molest young children during the pendency of earlier state criminal charges of indecent behavior with or sexual molestation of juveniles.

While the court accepted that child molestation is a crime of violence, it concluded that there was an insufficient relationship between the crime charged—receiving the videotape in the mail—and the alleged acts of molestation.

 \* \* \* That Dr. Byrd may have molested minors not connected with the specific offense now against him, or that young boys and pornography in addition to the subject videotape were present at Dr. Byrd's premises when the warrant for the mailed tape was executed, or that expert witness testimony supports that he will likely molest children once released, do not satisfy the nexus or involvement requirement of this Act for detaining a defendant before his conviction.

*Id.* at 110.

The court held that while the crime charged need not be a crime of violence, it must be "reasonably connected" to a crime of violence.

 \* \* \* Dr. Byrd is charged with receiving a videotape in the mail, a tape which depicts minors engaged in sexually explicit activity. The crime thus charged is obviously passive and is not in and of itself a crime of violence. Nevertheless, by demonstrating child molestation—an act of violence—by Dr. Byrd, and that such specific act or acts are reasonably connected to the specific offense with which he is charged, the government could have established that Dr. Byrd's is "a case that involves a crime of violence." In other words, it is not necessary that the charged offense be a crime of violence; only that the case involve a crime of violence or any one or more of the § 3142(f) factors. But the proof of a nexus between the non-violent offense charged and one or more of the six § 3142(f) factors is crucial.

*Id.* at 110.

■ As the *Byrd* court noted, the Bail Reform Act does not authorize detention on the sole ground that a person may be a danger to the community. The Act permits detention only if one of six prescribed circumstances exists under 18 U.S.C. § 3142(f)(1) and (2). The pertinent provisions are as follows:

**(f) Detention hearing.** The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the community—

 **(1)** upon motion of the attorney for the Government, in a case that involves—

 **(A)** a crime of violence;

 **(B)** an offense for which the maximum sentence is life imprisonment or death.

 **(C)** an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. § 1901 et seq.); or

 **(D)** any felony if the person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—

 (A) a serious risk that the person will flee; or

 (B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

■ The issue presented here is whether Reinhart's case "involves ... a crime of violence" within the meaning of § 3142(f)(1)(A). I conclude that the government has established that the defendants have molested children—establishing a crime of violence—and that these acts are reasonably connected to the pending charges.

Unlike the "obviously passive" act of receiving child pornography involved in *Byrd*, Counts 1 and 12 charge defendants with active involvement in the production of child pornography.[2] The evidence of child molestation is thus directly related to defendant's charged activities.

■ Defendants are charged in Count 1 with conspiracy "to employ, use, persuade, and induce [minors] to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct ..."[3] The "sexually explicit conduct" is not detailed, but a videotape which is the subject of Count 12 shows Carroll performing acts of oral and anal intercourse with 13 and 14 year-old boys.

Carroll's acts constitute crimes under several Louisiana statutes. Anal intercourse constitutes aggravated crime against nature when the victim is under seventeen years and the offender is at least three years older. LA. REV. STAT. ANN. § 89.1.

Non-consensual genital touching constitutes sexual battery, and non-consensual oral-genital touching constitutes oral sexual battery. LA. REV. STAT. ANN. §§ 43.1 and 43.3. Children under fifteen years of age do not have the capacity to consent to these acts. *Id.*

Carroll's acts are clear acts of violence under Louisiana law, and under the holding in *Byrd*. The government admitted at the detention hearing that it had no evidence implicating Reinhart in Count 12.[4] However, clear and convincing circumstantial evidence was presented at the hearing indicating that Reinhart not only conspired to produce child pornography as charged in Count 1, but also engaged in child molestation, which is a crime of violence under *Byrd*, 969 F.2d at 110. I also conclude that these acts of molestation are "reasonably connected" to Counts 1–12 of the indictment.

Although the government presented no videotape or photograph showing Reinhart in an act of molestation with a minor, FBI Agent John Helium testified that co-defendant Carroll recently told law enforcement agents that on an outing on March 15 or 16, 1997, Reinhart unzipped a boy's pants and fondled him for about one minute. Thus, there is direct evidence that Reinhart has engaged in the molestation of children.

Agent Helluin testified that among thousands of items of child pornography seized in a search of the trailer home defendants shared, was a videotape showing both defendants with a 10–year old boy in Carroll's bedroom. In the video, Carroll is seen giving the boy spandex shorts and a tank top to put on. While Carroll takes 35mm. photos of the boy, Reinhart gives the boy a porno-

---

2. In addition, Counts 2 through 11 charge Reinhart with distribution of child pornography, unlike Dr. Byrd's passive receipt of a videotape.

3. Conspiracy to commit a crime of violence is itself a crime of violence under the Bail Reform Act. *United States v. Mitchell*, 23 F.3d 1 (1st Cir.1994) (conspiracy to commit arson is a violent crime under the Bail Reform Act); *United States v. Chimurenga*, 760 F.2d 400, 403–04 (2d Cir.1985); *United States v. Greer*, 939 F.2d 1076, 1099 (5th Cir.1991), (§ 924(c); conspiracy to deprive citizens of civil rights), *aff'd en banc*, 968 F.2d 433 (5th Cir.1992), *cert. denied*, 507 U.S. 962, 113 S.Ct. 1390, 122 L.Ed.2d 764 (1993).

4. This admission was surprising, and raises the presumption that the government will dismiss this charge against Reinhart. However, the government has not yet completed its review of the thousands of items of evidence seized in the search of the defendants' trailer, including videos, photos, and computer files.

graphic magazine and later asks him if he is getting excited. One of the defendants later inquires whether the boy had kept his underpants on under the spandex shorts, because that wasn't the proper way to wear the clothes.

In another video, three boys are looking at a computer screen and asking questions. Carroll and Reinhart are seen and/or heard giving instructions regarding how to type in responses to sexually oriented questions being sent from an Internet "chat room."

After his arrest, Carroll told the FBI that Reinhart has had a long-term relationship with a boy in Richardson, Texas. The boy is now about sixteen years old, but the relationship began when he was about eight. Carroll reported that Reinhart had instructed the boy how to answer any questions regarding their relationship. Carroll assumed the relationship was sexual.

Information retrieved from one of Reinhart's several computer hard-drives shows that he provided advice to an Internet chat room correspondent on how to establish a long-term relationship with a young boy. Reinhart advised the correspondent to focus on building up a trusting relationship not only with the child, but with his parents so that the parents do not "cause problems" in the future.[5]

According to a government brief, Agent Helluin interviewed two minors who spent time at defendants' trailer in February and March 1997. The minors reported that Reinhart and Carroll showed them how to access sexually oriented chat rooms on the Internet. Reinhart showed them computer images of nude children, including Reinhart's own home page containing images of nude boys and girls. Reinhart used a Polaroid camera to take photographs of one of the minors, which he then scanned into his computer. Reinhart reportedly asked one of the minor's friends to place Reinhart's penis on the scan-

ner so an image could be created. Reinhart also used a video camera to record a minor while he was in the bathroom.[6]

In summary, the facts presented in this case are very different from those in *Byrd*. I conclude that the government has established the necessary nexus between the crimes charged and one of the six § 3142(f) factors—specifically, that the case involves a crime of violence under (f)(1)(A).

### B. Could conditions of release protect the community?

 Having determined that detention is not foreclosed by *Byrd*, the court nonetheless must consider whether defendant could be released successfully on conditions.

The Bail Reform Act mandates pretrial release unless, after a hearing, it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community ..." 18 U.S.C. § 3142(e).

The factors to be considered in making this determination are set out in § 3142(g): the nature and circumstances of the offense, particularly its nonviolent nature; the weight of the evidence; the history and characteristics of the person, including his character, family ties, employment, length of residence in the community, community ties, past conduct, criminal history, and record of court appearances; and the danger the defendant poses to the community if released.

There are a number of possible release conditions the court must consider under § 3142(c), such as third-party custody, limitations on personal associations, supervision by the Probation Office, imposition of a curfew, etc.

If the court finds there are no conditions of release which will reasonably assure the ap-

---

5. Not coincidentally, Carroll was a Boy Scout troop leader, and was also involved in another local organization which placed him in a position of trust and close proximity with one or more boys. In a Memorandum filed August 6, 1997, the government contended that Carroll routinely invited boys from his troop to spend the weekend at the mobile home he shared with Reinhart. FBI Agent Helluin testified that Carroll had molested at least one of the members of his troop.

6. *See* pp. 5–6 of government's Memorandum of Law in Support of Pretrial Detention filed August 6, 1997.

pearance of the defendant and the safety of any other person and the community, the court must order detention. 18 U.S.C. § 3142(e).

Dr. Maureen Brennan testified for the government regarding the symptoms and treatment of pedophiles. Dr. Brennan has a doctorate in clinical psychology, and specializes in the field of sexual abuse, especially of children. She has treated pedophiles for approximately eighteen years.

Dr. Brennan testified that pedophiles fall into two general categories: exclusive and non-exclusive. Non-exclusive pedophiles are typically seen in cases of incest. Their primary attraction is to other adults, but they may regress to acting out with children.[7]

Exclusive pedophiles (EP's) are primarily sexually attracted to children. They have few, if any, peer relationships, and are more likely to abuse same-sex victims. EP's who collect and/or distribute child pornography typically have been acting out with children for some time. It is possible, but unlikely, that a collector or distributor would refrain from acting out.

Dr. Brennan testified that EP's are rarely, if ever, successfully treated. She likened the process to training a heterosexual to become homosexual. Children are the only sexual outlets for an EP, and most often this sexual orientation begins in adolescence or earlier.

Considering Dr. Brennan's testimony, it is clear that Reinhart's release would pose a serious danger to the community, particularly young boys, unless his activities were monitored at all times. However, Reinhart has proposed no qualified third-party custodian who could assume these important duties. This deficiency is fatal to Reinhart's pretrial release.

Furthermore, for reasons discussed more completely under "Risk of Flight" below, I conclude that there are no conditions of release which could reasonably assure the safety of the community and the appearance of the defendant.

## C. Risk of Flight

■ The government also contends that Reinhart is a risk of flight—which is another one of the six factors under § 3142(f) which would permit pretrial detention.[8]

The Pretrial Services Report provided by the Probation Office recommends detention both on grounds of flight risk and danger to the community. The report shows that Reinhart has no family ties to this community; he is currently homeless (Carroll's trailer has now been repossessed); he has no assets except a truck; his parents in Richardson, Texas will not assist him financially with a bond; he is unmarried and has no children; and his employment history is unstable. The probation office identified nine jobs Reinhart has held since 1986. The jobs were in New Mexico, Arizona, Texas and Lafayette, Louisiana. Most of them were held only for a matter of months.[9]

Evidence presented at the detention hearing indicates that Reinhart has in the past discussed the possibility of fleeing rather than facing criminal charges. An audiotape seized in the search of the trailer contains a conversation between Reinhart and a 14-year old boy. In the conversation, Reinhart asks the boy what he and another minor have told police. The boy replies that nothing has been said, and remarks, "what could I say?" Reinhart replies, "you could say lots." Reinhart comments that if the boy says nothing,

---

7. "Acting out" connotes some level of actual physical contact with the object of sexual desire.

8. The instant case is further distinguishable from *Byrd* in that the government conceded that Dr. Byrd was not a risk of flight, whereas in the instant case, the government moved for detention on the alternative basis that Reinhart was a risk of flight. *Id.* at 109.

9. There are actually four Pretrial Services Reports: the first two were prepared by the Probation Office in Brownsville, Tx. where Reinhart

was arrested. Two addendums were later prepared by our local Probation Office. The first report recommends detention solely on the basis of flight risk, not danger to the community. The second report recommends detention on both grounds, noting that Reinhart was arrested in June 1997 on Louisiana state charges of aggravated rape, aggravated oral sexual battery, sexual battery and molestation of a juvenile. Since then, however, the local D.A. has accepted prosecution of only the following charges: contributing to the delinquency of a minor and indecent behavior with a juvenile.

the other minor would be seen as a liar and the "whole thing will blow over." Reinhart then comments that if the boys tell police anything serious, he would pack his bags and leave the country rather than make the boys testify.

Countered against this evidence of possible flight is the fact that Reinhart turned himself in when he learned of the arrest warrant issued in this case. Reinhart was in Mexico, doing work for a local bail bonding company, when he learned of the warrant. Reinhart, through his attorney, coordinated a time and place to turn himself in, and was ultimately arrested in Texas with no problems.

■ Preponderance of the evidence is the standard of proof on the issue of risk of flight. *United States v. King,* 849 F.2d 485 (11th Cir.1988); *United States v. Medina,* 775 F.2d 1398, 1402 (11th Cir.1985); *Chimurenga, supra,* 760 F.2d at 405 (2d Cir.1985); *United States v. Simpkins,* 826 F.2d 94, 96 (D.C.Cir.1987).

> * * * That preponderance must, of course, go to the ultimate issue: that no combination of conditions—either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful—can "reasonably" assure that the defendant will appear for trial. 18 U.S.C. § 3142(c).

*United States v. Xulam,* 84 F.3d 441, 442 (D.C.Cir.1996).

Considering the factors delineated in the Act, I conclude by a preponderance of the evidence that Reinhart is a risk of flight.

Unlike his co-defendant who is free on bond, Reinhart has identified no parent or other third party custodian who could assure that Reinhart is monitored 24 hours a day. Reinhart has no place to live, no ties to the community, and an unstable employment history. Despite the fact that he cooperated in connection with his arrest, I conclude that there is a serious risk he will flee based upon his own recorded comments and the fact that he now knows that his co-defendant has provided some incriminating evidence about his activities.

*Conclusion*

For the foregoing reasons, I conclude by clear and convincing evidence that Reinhart poses a serious danger to the safety of the community, particularly young males. I also conclude by a preponderance of the evidence that there is a serious risk Reinhart will flee if released on bond. There are no conditions of release which can reasonably address these problems. Consequently the government's motion for detention is **GRANTED.**

## ORDER OF DETENTION PENDING TRIAL

For the reasons set forth in the Memorandum Ruling of August 8, 1997,

IT IS ORDERED that Reinhold is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.