COMMONWEALTH *vs.* THOMAS YOUNG & another.[1]

Suffolk. January 5, 2009. - May 4, 2009.

Present: MARSHALL, C.J., SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Firearms. Constitutional Law,* Preventive detention. *Due Process of Law,*
Pretrial detainees. *Statute,* Construction. *Words,* "Substantial risk."

Unlicensed possession of a firearm does not qualify as a predicate offense for
purposes of G. L. c. 276, § 58A, which allows the Commonwealth to seek
pretrial detention of individuals accused of certain serious offenses, as pos-
session of an unlicensed firearms does not, by its nature, involve a substantial
risk that physical force against the person of another may result, as required
by the statute. [711-717] COWIN, J., dissenting.


CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on November 23, 2007.

The case was reported by *Spina,* J.

*Rachel J. Eisenhaure,* Assistant District Attorney (*C. Samuel
Sutter,* District Attorney, with her) for the Commonwealth.

*Willie J. Davis* for Thomas Young.

*Paul W. Patten* for Jermaine Rodrigues.

*Murray A. Kohn,* Committee for Public Counsel Services, for
Committee for Public Counsel Services, amicus curiae, submit-
ted a brief.

SPINA, J. These cases, here on a reservation and report by a
single justice of this court, require us to decide whether un-
licensed possession of a firearm qualifies as a predicate offense
pursuant to G. L. c. 276, § 58A, which allows the Common-
wealth to seek pretrial detention of individuals accused of certain
serious offenses. We conclude that it does not.[2]

1. *Facts.* The defendants, in unrelated cases, were both charged

---

[1]Jermaine Rodrigues. The Commonwealth's case against a third defendant
was nolle prossed and he is no longer part of this appeal.

[2]We acknowledge the amicus curiae brief submitted by the Committee for
Public Counsel Services on behalf of the defendants.

with, inter alia, unlicensed possession of a firearm. See G. L. c. 269, § 10 (*a*).[3] The Commonwealth moved to detain them pursuant to G. L. c. 276, § 58A (§ 58A). A judge in the Superior Court presiding over both § 58A proceedings ruled that unlicensed possession of a firearm was not a predicate offense for purposes of § 58A. We summarize the relevant procedural history with respect to each defendant.[4]

*Jermaine Rodrigues.* On September 27, 2007, a grand jury in Bristol County indicted Rodrigues for (1) unlawful possession of a large capacity weapon, see G. L. c. 269, § 10 (*m*); (2) unlawful possession of a large capacity feeding device, see G. L. c. 269, § 10 (*m*); (3) unlawful possession of a firearm whose serial number had been removed, defaced, altered, obliterated, or mutilated in any manner, see G. L. c. 269, § 11C; (4) unlawful possession of ammunition without a firearm identification (FID) card, see G. L. c. 269, § 10 (*h*) (1); (5) receiving stolen property, see G. L. c. 266, § 60; (6) unlawful possession of a firearm, see G. L. c. 269, § 10 (*a*); and (7) unlawful possession of a loaded firearm, see G. L. c. 269, § 10 (*n*).

On October 30, 2007, the Commonwealth, citing all seven indictments, moved to detain the defendant pursuant to § 58A.[5] A judge in the Superior Court denied the motion on the ground that "possession without more does not establish clear and convincing evidence of dangerousness" pursuant to G. L. c. 276, § 58A.

---

[3]As discussed *infra*, the defendants were charged with other possessory firearm offenses under G. L. c. 269. The Commonwealth does not urge any distinction between those charges and the charges for unlicensed possession of a firearm under G. L. c. 269, § 10 (*a*).

[4]Because we conclude that unlicensed possession of a firearm is not a qualifying offense for purposes of G. L. c. 276, § 58A (§ 58A), we do not recite the evidence of dangerousness presented at the respective § 58A hearings. See *infra* (§ 58A does not apply unless individual charged with predicate offense).

[5]At that time, Rodrigues appears to have been detained pursuant to a District Court pretrial detention order dated August 28, 2007. The detention order was based on a complaint issued in the Taunton Division of the District Court Department charging him with most of the same offenses that formed the basis for the later Superior Court indictments; the complaint was based on the same conduct giving rise to the indictments. Rodrigues subsequently petitioned the Superior Court for review of the District Court judge's order pursuant to § 58A (7). That petition was denied on August 31, 2007.

*Thomas Young.* On October 22, 2007, a complaint issued in the Taunton Division of the District Court Department charging Thomas Young with (1) two counts of possession of a firearm without an FID card, see G. L. c. 269 § 10 (*h*); (2) possession of a class D substance, see G. L. c. 94C, § 34; (3) conspiracy to sell drugs, see G. L. c. 94C, § 40; (4) distribution of a class B substance, see G. L. c. 94C, § 32A (*a*); (5) failure to yield at an intersection, see G. L. c. 89, § 8; (6) failure to wear a seat belt, see G. L. c. 90, § 13A; and (7) receiving stolen property, see G. L. c. 266, § 60. On October 24, 2007, another complaint issued in the District Court charging Young with (1) carrying a firearm without a license, see G. L. c. 269, § 10 (*a*); (2) possession of a firearm without an FID card, see G. L. c. 269, § 10 (*h*); and (3) carrying a loaded firearm without a license, see G. L. c. 269, § 10 (*n*).

After a § 58A hearing on October 26, 2007, a judge in the District Court, citing "firearm w/o license, FID" as predicate offenses, ordered that Young be detained pending trial. Young filed a petition for review of the pretrial detention order in the Superior Court. See § 58A (7). The petition was allowed by the same judge that presided over Rodrigues's § 58A hearing and bail was set at $7,000 cash.

The Commonwealth subsequently sought relief in both cases from a single justice of this court pursuant to G. L. c. 211, § 3, contending that possessory firearm offenses come within § 58A (1), which permits the Commonwealth to move for pretrial detention if a defendant has been charged with "any other felony that by its nature involves a substantial risk that physical force against the person of another may result." § 58A (1) (residual clause). The single justice reserved and reported the cases to the full court.

2. *Statutory background.* Section 58A "sets out a comprehensive scheme of measures available with respect to arrested persons charged with crime." *Mendonza* v. *Commonwealth*, 423 Mass. 771, 774 (1996). Among the measures described in § 58A is pretrial detention. The pretrial detention regime in § 58A "is explicitly 'predictive' and 'seek[s] systematically to identify those who may present a danger to society and to incapacitate them before that danger may be realized.' " *Id.* at 780, quoting

*Opinion of the Justices*, 423 Mass. 1201, 1219 (1996). Section 58A (1) provides:

> "The commonwealth may move, based on dangerousness, for an order of pretrial detention or release on conditions for a felony offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person of another, or *any other felony that by its nature involves a substantial risk that physical force against the person of another may result,* including the crime of burglary and arson whether or not a person has been placed at risk thereof, or a violation of an order pursuant to [G. L. c. 208, § 18, § 34B, or § 34C; G. L. c. 209, § 32; G. L. c. 209A, § 3, § 4, or § 5; or G. L. c. 209C, § 15 or § 20], or arrested and charged with a misdemeanor or felony involving abuse as defined in [G. L. c. 209A, § 1,] or while an order of protection issued under said [G. L. c. 209A] was in effect against said person, an offense for which a mandatory minimum term of three years or more is prescribed in [G. L. c. 94C], arrested and charged with a violation of [G. L. c. 268, § 13B,] or a third or subsequent conviction for a violation of [G. L. c. 90, § 24]" (emphasis added).

If an individual has been charged with a predicate offense, a hearing may be held to determine whether the individual should, pending trial, be released on personal recognizance without surety, released on conditions of release set forth in § 58A (2) (A)-(B), or detained. § 58A (2). The hearing "shall be held immediately upon the person's first appearance before the court unless that person, or the attorney for the commonwealth, seeks a continuance." § 58A (4).[6] Pretrial detention may be ordered only if the judge, after considering a number of statutorily prescribed factors to assess an individual's dangerousness,[7] finds that the

---

[6]If the Commonwealth's motion for a continuance is allowed, the continuance may not exceed three business days. § 58A (4). A continuance on the defendant's motion may not exceed seven days. *Id.* In either event, "[d]uring a continuance, the individual shall be detained upon a showing that there existed probable cause to arrest the person." *Id.* See *Commonwealth* v. *Lester L.*, 445 Mass. 250, 255-256 (2005). An individual also may be detained pending completion of a § 58A hearing. § 58A (4).

[7]Section 58A (5) provides:

"[The judge] shall, on the basis of any information which he can

Commonwealth has established by clear and convincing evidence that "no conditions of release will reasonably assure the safety of any other person or the community." § 58A (3).

An individual detained under § 58A "shall be brought to a trial as soon as reasonably possible, but in absence of good cause, the person so held shall not be detained for a period exceeding ninety days excluding any period of delay as defined in Massachusetts Rules of Criminal Procedure Rule 36 (b) (2) [378 Mass. 909 (1979)]." *Id.* An individual ordered detained by a judge in the District Court may petition the Superior Court for review of that order. § 58A (7). Review of a Superior Court pretrial detention decision may be had by application to a single justice of this court. *Mendonza* v. *Commonwealth, supra* at 775.

3. *Discussion.* The Commonwealth initially contends that the judge in the Superior Court erred in Rodrigues's case in concluding that "possession without more does not establish clear and convincing evidence of dangerousness" because he conflated the predicate offense inquiry, see § 58A (1), with the individualized dangerousness determination under § 58A (5).

The threshold question in every case is whether the defendant has committed a predicate offense under § 58A (1), thereby triggering the Commonwealth's right to move for a § 58A hearing. See § 58A (4) ("When a person is held under arrest for an offense listed in subsection [1] and upon a motion by the commonwealth, the judge shall hold a hearing . . ."). We agree

reasonably obtain, take into account the nature and seriousness of the danger posed to any person or the community that would result by the person's release, the nature and circumstances of the offense charged, the potential penalty the person faces, the person's family ties, employment record and history of mental illness, his reputation, the risk that the person will obstruct or attempt to obstruct justice or threaten, injure or intimidate or attempt to threaten, injure or intimidate a prospective witness or juror, his record of convictions, if any, any illegal drug distribution or present drug dependency, whether the person is on bail pending adjudication of a prior charge, whether the acts alleged involve abuse as defined in [G. L. c. 209A, § 1], or violation of a temporary or permanent order issued pursuant to [G. L. c. 208, § 18 or § 34B; G. L. c. 209, § 32; G. L. c. 209A, § 3, § 4, or § 5; or G. L. c. 209C, § 15 or § 20], whether the person has any history of orders issued against him pursuant to the aforesaid sections, whether he is on probation, parole or other release pending completion of sentence for any conviction and whether he is on release pending sentence or appeal for any conviction."

with the Commonwealth that § 58A requires a categorical approach to determining whether a felony is a predicate offense, independent of the particular facts giving rise to a complaint or indictment. The statute's plain language directs courts to focus on whether a felony offense, if not one of the specifically listed crimes, "has as *an element of the offense* the use, attempted use, or threatened use of physical force against the person of another" or "*by its nature* involves a substantial risk that physical force against the person of another may result" (emphasis added). § 58A (1). These statutory alternatives demonstrate that the predicate offense inquiry focuses on the elements of the crime, rather than the particular facts underlying a complaint or indictment.

This approach comports with the analysis utilized under the Federal Bail Reform Act, 18 U.S.C. § 3142 (2000). See *United States* v. *Singleton*, 182 F.3d 7, 10-12 (D.C. Cir. 1999) (offenses eligible for pretrial detention hearing categorically ascertainable by "reference to their elements"). See also *United States* v. *Bowers*, 432 F.3d 518, 521 (3d Cir. 2005) (same); *United States* v. *Johnson*, 399 F.3d 1297, 1301 (11th Cir. 2005) (same); *United States* v. *Rogers*, 371 F.3d 1225, 1228 n.5 (10th Cir. 2004) (same).[8] Consequently, an individualized dangerousness determination based on, inter alia, the factual predicate giving rise to the complaint or indictment, see § 58A (5), is appropriate only if the predicate offense hurdle has been cleared. See *United States* v. *Byrd*, 969 F.2d 106, 109-110 (5th Cir. 1992) (defendant could not be detained unless accused of predicate offense despite dangerousness); *United States* v. *Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ("where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in [18 U.S.C. § 3142(f)(1)]").

---

[8]We previously have noted that § 58A "is similar *in most respects* to the Federal Bail Reform Act" (emphasis added). *Mendonza* v. *Commonwealth*, 423 Mass. 771, 773 (1996). In the absence of a "clear reason to do otherwise, we interpret cognate provisions of State and Federal law similarly." *Miller* v. *Cotter*, 448 Mass. 671, 679 (2007). Notwithstanding the textual differences in the residual clauses under the Bail Reform Act, 18 U.S.C. § 3142 (2000), and § 58A, respectively, see *Mendonza* v. *Commonwealth, supra* at 787, the statutory analyses of the Federal courts in concluding that the Bail Reform Act requires a categorical approach to the predicate offense determination are sound and apply to § 58A for the reasons discussed *supra*.

To the extent the judge merged the predicate offense inquiry, see § 58A (1), and the particularized dangerousness determination under § 58A (5), this was error, but does not affect the resolution of this case.

Turning to the heart of the Commonwealth's appeal, we consider whether the residual clause making a predicate offense "any other felony that by its nature involves a substantial risk that physical force against the person of another may result" encompasses unlicensed possession of a firearm.[9],[10]

We begin with the language of the statute itself and "presume, as we must, that the Legislature intended what the words of the statute say." *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 687 (1986). See 2A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 46:1, at 150-151 (7th ed. 2007) (legislative intent gleaned from what is said, not from what Legislature might have intended to say). We interpret statutes "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). "[W]ords in a statute must be considered in light of

---

[9]To establish a violation of G. L. c. 269, § 10 (*a*), the Commonwealth must establish that (1) the defendant knowingly possessed the firearm, see *Commonwealth* v. *Jackson*, 369 Mass. 904, 916 (1976); and (2) that the firearm met the requirements of a firearm as defined by G. L. c. 140, § 121. See *Commonwealth* v. *Sampson*, 383 Mass. 750, 753 (1981). The Commonwealth need not prove that the defendant knew that a license was necessary to lawfully possess the firearm. *Commonwealth* v. *Jackson*, *supra* at 917. The Commonwealth also need not show that the defendant has not obtained a license or FID card. See *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977). If the defendant has a license or an FID card, then the burden is on the defendant to come forward with such evidence. *Id.*

[10]As mentioned in note 3, *supra*, the Commonwealth does not urge any distinction between unlicensed possession of a firearm, see G. L. c. 269, § 10 (*a*), possession of a firearm or ammunition without an FID card, see G. L. c. 269, § 10 (*h*), and unlicensed possession of a large capacity firearm or large capacity feeding device, see G. L. c. 269, § 10 (*m*). Because the elements of these possessory crimes differ only in the instrumentality possessed, for purposes of the present discussion and ease of reference, we refer to these crimes generically as unlicensed possession of a firearm.

the other words surrounding them." *Commonwealth* v. *Brooks*, 366 Mass. 423, 428 (1974).

Neither defendant nor the Commonwealth disputes that the words "any other felony" mean a felony that does *not* have as an element of the offense the use, attempted use, or threatened use of physical force against another. They disagree, however, as to the meaning of the phrase "by its nature involves a substantial risk that physical force against the person of another may result." § 58A (1).

The statute does not define the term "substantial risk." "Substantial" is defined as "considerable in amount, value, or worth." *Commonwealth* v. *Robinson*, 444 Mass. 102, 106 (2005), quoting Webster's Third New Int'l Dictionary 2280 (1993) (Webster's). "Risk" refers to "the possibility of loss, injury, disadvantage or destruction." Webster's, *supra* at 1961. Thus, to constitute a predicate offense under the residual clause, an unenumerated felony by its nature must involve a considerable possibility that physical force against another may result.

Unlicensed possession of a firearm does not, *by its nature*, involve a substantial risk that physical force against another may result. That a person possesses a firearm without a valid license does not itself pose a substantial risk that physical force against another may result. Rather, it is the unlawful *use* of a firearm that involves a substantial risk that physical force against another may result.

While we are cognizant that unlicensed possessors of firearms may use firearms unlawfully, unlicensed possession of a firearm itself is a regulatory crime. It is passive and victimless. It does not even require proof that a defendant knowingly failed to acquire or maintain a license, see *Commonwealth* v. *Jackson*, 369 Mass. 904, 917 (1976), and thus may occur regardless whether an individual has acquired a firearm for an illicit or lawful purpose, or simply allowed a license to lapse. Because the motive of an unlicensed possessor of a firearm is totally irrelevant to criminal liability, we discern no principled legal distinction between the risk of physical force posed by licensed and unlicensed possessors of firearms. While a licensed individual may have knowledge of the proper safety practices for using, handling, and storing firearms, the acquisition of a license does not guarantee that

the licensee will abide by those safety practices or refrain from using the firearm for an unlawful purpose.

The Commonwealth urges us to equate the words "by its nature" with the "majority of factual scenarios" in which the felony occurs.[11] Unlicensed possessors of firearms, it argues, typically shirk licensing requirements because they intend to use the firearm for unlawful purposes. However, inquiry into the "nature" of the felony examines the legal elements comprising the felony, not the factual predicate giving rise to a complaint or indictment. See *United States* v. *Singleton*, 182 F.3d 7, 10-12 (D.C. Cir. 1999). The elements of unlicensed possession of a firearm, see note 9, *supra*, do not require proof that a defendant purposefully evaded firearm licencing requirements, see *Commonwealth* v. *Jackson*, *supra*, let alone proof that a defendant's failure to obtain a license was motivated by a desire to use the firearm for an illicit purpose.

Consideration of the crimes specifically enumerated in § 58A (1) bolsters our conclusion that unlicensed possession of a firearm is not a predicate offense. We previously have characterized the enumerated crimes as plainly presenting "the menace of dangerousness." *Mendonza* v. *Commonwealth*, 423 Mass. 771, 787 (1996). For example, § 58A (1) expressly includes "burglary and arson whether or not a person has been placed at risk [of physical force]." Although these are crimes against property, a foreseeable risk of harm to others inheres in both crimes in that an unsuspecting person may happen upon the criminal conduct, and may be either injured by the conduct itself, as in the case of arson, or become ensnared in a confrontation with the perpetrator as in the case of burglary. A review of the other crimes qualifying as predicate offenses leads us to the firm conclusion that a felony constitutes a predicate offense under the residual clause if its commission evinces a disregard for the safety and well-being of others. For instance, the Commonwealth may seek pretrial deten-

---

[11]This argument is somewhat inconsistent with the Commonwealth's position that a categorical approach be used to determine whether an offense qualifies as a predicate offense. We think the dissent is similarly mistaken. Where the elements of a felony do not require proof that the defendant actually disregarded the safety and well-being of others, any determination concerning the substantiality of the connection between the felony and the risk of physical force against another properly lies with the Legislature.

tion if an individual has been arrested and charged with a violation of G. L. c. 90, § 24, that could result in a third or subsequent conviction of operating while under the influence or reckless driving. § 58A (1). This reference implicitly suggests that the modicum of dangerousness inferable from the commission of any of the other specifically enumerated offenses (or an offense involving the use, attempted use, or threatened use of force) is absent until an individual has been arrested and charged with a violation of G. L. c. 90, § 24, that could result in a third or subsequent conviction of that offense. Similarly, violations of certain orders under statutes proscribing domestic abuse present a substantial risk of physical harm to another.

For the reasons discussed *supra*, unlicensed possession of a firearm does not manifest a disregard for the safety and well-being of others, and therefore lacks the "menace of dangerousness" inherent in the crimes specifically included in § 58A (1). *Mendonza* v. *Commonwealth, supra.*[12],[13]

4. *Conclusion.* In holding that unlicensed possession of a

---

[12]The Commonwealth argues that the words "may result," by way of contrast with the Federal cognate residual clause, see 18 U.S.C. §§ 3142(f), 3156(a)(4)(B) (2000), do not require a direct causal connection between the risk of physical force against another and the felony itself. We disagree. The statute unambiguously requires that a felony "*by its nature* involve[] a substantial risk that physical force against the person of another may result" (emphasis added). Because the felony "by its nature" must involve the requisite risk, the risk must directly arise out of the felony itself. As discussed *supra*, the risk of harm to another does not stem directly from unlicensed possession of a firearm, but rather from unlawful use of the firearm.

[13]We note that this case does not require us to decide whether the possession of a pipe bomb, silencer, sawed off shotgun, or other instrumentality that is generally associated with violence and has little socially useful value constitutes a predicate offense. See *United States* v. *Dodge*, 846 F. Supp. 181, 184 (D. Conn. 1994) (silencer and pipe bomb inherently dangerous weapons for which there is no peaceful use, and thus, their possession is predicate offense under Federal pretrial detention statute). See also *United States* v. *Lane*, 252 F.3d 905, 907 (7th Cir. 2001) ("Some firearms, it is true — for· example sawed-off shotguns — have no significant lawful use, and so their possession by felons may well constitute a crime of violence . . ."). Cf. *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 497-498 (1981), appeal dismissed, 455 U.S. 931 (1982) (sentence of from forty to fifty years for unlawful possession of machine gun not unconstitutionally disproportionate because Legislature could infer from "common knowledge that the unlicensed possession of machine guns is almost always associated with the commission of violent crimes with the potential for mass killing").

firearm is not a predicate offense for purposes of § 58A, we are not unmindful of the dangers relating to unlicensed possession of firearms. Nevertheless, in the absence of clear legislative intent to the contrary, we cannot rewrite or torture the statute's language to include this offense.

For the foregoing reasons, the order allowing Rodrigues's petition for review of the District Court's decision to detain him pending trial and the order denying the Commonwealth's motion for a § 58A hearing in Young's case are affirmed.

*So ordered.*

COWIN, J. (dissenting). The court informs us today that possession of an unlicensed firearm does not "by its nature involve[] a substantial risk that physical force against the person of another may result," and that therefore that crime does not constitute a "predicate offense" for purposes of G. L. c. 276, § 58A (which authorizes pretrial detention based on the "dangerousness" of the defendant). This conclusion may well come as a surprise to those escalating numbers who are victimized, or who have observed others victimized, by the use of unlawfully possessed firearms, as well as to those whose reading of the daily newspaper communicates the stunning social costs of our failure to address seriously the problems associated with the alarmingly increasing use of such weapons. I therefore respectfully dissent.

I agree with the court that the statutory power to detain without bail a person charged with particular felonies on the ground of dangerousness is limited to those occasions in which commission of a defined felony has been claimed. *Ante* at 711-712. I also agree with the court that application of the statute to a given felony must be determined in the abstract based on the character of that felony without reference to the specifics of the individual case or the individual defendant. Those considerations become relevant only after a conclusion that the statute applies to the felony charged.

I part ways with the court in the following respect. The definition of an eligible felony in § 58A appears to be the result of a legislative effort to expand the concept of dangerousness beyond

those felonies in which violence actually occurs or is threatened. Such felonies are obviously included as eligible for pretrial detention (Commonwealth may seek order of pretrial detention or release on conditions "for a felony offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person of another"). But the definition does not stop there; the statute goes on to refer to "any *other* felony that by its nature involves *a substantial risk* that physical force against the person of another may result" (emphasis supplied). Thus, it is plain that the Legislature sought to include within the scope of those charges for which dangerousness hearings are available offenses that, while not violent themselves, create a substantial risk that physical force against a person will follow.

Try as I might, I cannot understand how possession of a firearm in violation of applicable licensing law can constitute anything *other* than a substantial risk that the firearm will be used to effect "physical force against the person of another." G. L. c. 276, § 58A. When a handgun or automatic weapon is involved, the purpose of the firearm is to injure or kill; there is no other reason for that weapon's existence. We have recognized in various contexts that firearms are, by nature and design, dangerous instrumentalities. See, e.g., *Jupin* v. *Kask*, 447 Mass. 141, 151 (2006), in which we acknowledged the existence of a heightened duty of care on the part of gun owners because of the nature of firearms. Similarly, legislation has often been adopted because of the obvious dangers posed by the availability of firearms. The Legislature has increased the minimum sentence to five years' imprisonment for the mere possession of a firearm during the commission or attempted commission of a felony. See G. L. c. 265, § 18B, as amended through St. 1998, c. 180, § 56[1]; *Commonwealth* v. *Hines*, 449 Mass. 183, 187-189 (2007). See also *Commonwealth* v. *Hawkins*, 21 Mass. App. Ct. 766, 768-769 (1986) (possession of firearm in armed robbery "as aggravating a circumstance as actual use").

The risks associated with the possession of any firearm quite

---

[1]In this respect, the Legislature has apparently accepted the proposition that people who possess guns are likely to fire them, an inference that seems to escape the court. See *infra*.

clearly are increased when those firearms are unlicensed. It is generally understood in the Commonwealth that there are licensing requirements applicable to firearms, and that it is unlawful to violate them. That the owner or user of an inherently dangerous instrumentality subject to licensure chooses not to abide by licensing requirements suggests powerfully that that person has obtained the weapon for an unlawful purpose that involves violence or the threat thereof. This is nothing more than common sense. We have stated that "the Legislature might infer from common knowledge . . . that a large proportion of those who use guns in violent crimes in this Commonwealth are unlicensed." *Commonwealth* v. *Jackson*, 369 Mass. 904, 911 (1976). The fact that some otherwise law-abiding individuals may possess unlicensed firearms due to neglect or mistake does not alter the basic nature of the act in most situations or reduce the danger of death or serious personal injury that accompanies the use of the great majority of firearms that have not satisfied licensing requirements.[2]

The court does not address effectively either the obvious relationship between unlicensed firearms and their use in violent behavior or the alarming proliferation of such weapons and their use in antisocial activity. Instead, the court resorts to a most subtle distinction between *possession* of an unlicensed firearm and the *use* of that firearm. *Ante* at 714. Reduced to its minimum, that is simply a reiteration of the tired slogan that "guns don't kill people, people do." We know this to be a dangerous oversimplification. The fact is that people kill people *with guns*, and in a substantial number of cases those guns are unlicensed. I have little doubt that a distinction between the existence of an unlicensed weapon and its use never entered into the collective legislative mind when the language of § 58A regarding felonies involving "a substantial risk [of] physical force" was adopted. Creation of the distinction by judicial construction essentially amends the statute and is inconsistent with its purpose.

The court uses interpretive expedients to support its conclusion

---

[2]In the event of the "innocent" failure to secure a proper license, the nature of the offense would become apparent at the hearing pursuant to G. L. c. 276, § 58A, where the Commonwealth must demonstrate by clear and convincing evidence that "no conditions of release will reasonably assure the safety of any other person or the community." G. L. c. 276, § 58A (3).

that we need not concern ourselves with the risks posed by the possession of unlicensed weapons. The statement that "we discern no principled legal distinction between the risk of physical force posed by licensed and unlicensed possessors of firearms," *ante* at 714, simply ignores reality. Similarly, the court emphasizes that disregard of the safety of others is not an element of the offense of unlicensed possession of a firearm in violation of G. L. c. 269, § 10 (*a*), *ante* at 716 n.12. But the exercise in which we are presently engaged is not a determination of what constitutes sufficient evidence to convict under that statute. While the motive of an unlicensed possessor is irrelevant to the offense of possession without a license, it is not that statute that we consider. Rather, it is an entirely different statute, i.e., G. L. c. 276, § 58A, which is based on the concept of substantial risk of physical force against the person of another. If that is the consideration, the differences in likely behavior of licensed as opposed to unlicensed possessors of weapons becomes obvious.

Use of the doctrine of ejusdem generis, *ante* at 713-714, is misplaced and distorts the legislative purpose. As the court states, we are guided in our interpretation by "the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Here, the Legislature's purpose is revealed by the scope of the felonies to which § 58A applies (i.e., not only those in which physical force is an element, but also those to which a substantial *risk* of physical force attaches). Later references to other offenses such as burglary, arson, and violation of abuse orders *expand* the definition so that it will govern activities that might not otherwise be covered. Such references have not been included in the statute to limit its intended scope.

At the end of an opinion devoted largely to explaining why unlicensed firearms do not create the type of physical force that justifies a dangerousness hearing under § 58A, the court states that "we are not unmindful of the dangers relating to unlicensed possession of firearms." *Ante* at 717. Neither is the Legislature. We should allow the statute to operate as that body intended,

specifically, that the remedy is available where there is a substantial relationship between the felony charged and the risk of violence. That does not mean that the remedy will be imposed in all, or even most, cases. A considerable burden of proof remains on the Commonwealth to establish that, applying carefully defined factors, "no conditions of release will reasonably assure the safety of any other person or the community." G. L. c. 276, § 58A (3). But a fair reading of the statute would reject the pretense that a firearm is some neutral piece of equipment that is harmless in and of itself, and would recognize at a minimum the deadly sequence that so often follows on the possession of an unlicensed firearm. I would reverse the orders of the Superior Court.